Douglas GILMORE, minor, by and through Walter Gilmore, his Father and Next Friend, and Walter Gilmore, individually, Plaintiffs in Error,

v.

GRAND PRIX OF TULSA CORPORATION, a Corporation, Defendant in Error,

and

Southwestern Casualty Insurance Company, Defendant in Error and Garnishee.

No. 40117.

Supreme Court of Oklahoma.

June 11, 1963.

C. Lawrence Elder and James E. Poe, Tulsa, for plaintiffs in error.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for defendant in error and garnishee.

BLACKBIRD, Chief Justice.

This appeal arose out of a garnishment proceeding instituted by plaintiffs in error, hereinafter referred to as "garnishors", against the insurance company appearing here as defendant in error, henceforth referred to as "garnishee", after said garnishors had recovered judgment on March 11, 1961, against the Grand Prix of Tulsa Corporation, in a total sum of $5605.60, on account of personal injuries sustained on June 17, 1960, by the minor, Doulgas Gilmore, at a "go-cart" track, operated by the latter corporation, to which we will hereinafter refer as: "Grand Prix".

The reason for the garnishee being proceeded against was that previously, on September 10, 1959, it had issued to Grand Prix an "Owners', Landlords', And Tenants' Liability" policy covering bodily injury liability up to $20,000.00, with a prescribed "Policy Period" from that date, to September 10, 1960.

The garnishee's answer denied that on the date of the Gilmore boy's injury it had any indebtedness or property in Tulsa County belonging to Grand Prix, and denied that on the day it was served with garnishment summons, or since, it had any contract of indemnity affording Grand Prix (insurance) protection.

In reply to said answer, the garnishors took issue with the garnishee's denials, and, it was upon the issues thus joined, that the cause came on for trial by the court without a jury.

At the trial, there was no question but that Grand Prix had at one time been insured under the policy the garnishee had issued to it on September 10th, 1959, as aforesaid, and for which said garnishee had paid a year's premium of $400.00 in advance. As the evidence was developed, however, the controlling issue became whether or not the policy had thereafter been effectively cancelled a long time prior to the accident out of which Grand Prix' liability to the garnishors arose.

The method by which the policy could be cancelled was prescribed by its paragraph 20, which reads as follows:

"This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address show in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but *payment or tender of unearned premium is not a condition of cancelation.*" (Emphasis ours.)

Grand Prix' "go-cart" track is located at the corner of East 51st and South Lewis Streets in Tulsa. It appears from the evidence that if this location was numbered, its address would probably be "2100 *East* 51st", but the address shown for Grand Prix in the policy involved, was: 2100 West 51st". It was to the latter address that the garnishee mailed its form of "NOTICE TO INSURED OF CANCELLATION OF INSURANCE POLICY" on December 14, 1959. On or about December 16, 1959, this notice form was returned to the garnishee sender by the U. S. Postal Department unclaimed, and still in the sealed envelope in which it was mailed with said department's notation stamped thereon: "No such number." There can be no question but that it was not received by Grand Prix.

At the trial, no evidence was introduced to explain why Grand Prix' address, as typed into the policy, was on "West" rather than East, 51st Street, except that "2100 West 51st" was the way it was typed on the application for the policy. It was shown that the application was processed through one of the garnishee's agents, the Lester R. Langford Agency of Springfield, Missouri, after Mr. Langford and a Mr. Brown, one of the garnishee's employees, had traveled to Tulsa and made an inspection of the go-cart track premises and Grand Prix' property there.

After Mr. Newcomb Cleveland, President of Grand Prix, and Mr. Walter Walmsley, one of its directors and an insurance man, himself, had testified to meeting with Lang-ford and Brown at the premises on that occasion, Mr. Walmsley testified as follows:

"Q. Did you give to the agents of the company the correct address?

\*    \*    \*    \*    \*    \*

"A. As far as the exact address I don't recall what the exact address was, numbered address was. We did give the address to the agent representing the Southwest Casualty Company, for the purpose of issuing this policy.

"Q. Did you give that address west?

"A. No, not west. \* \* \*.""

Mr. Walmsley also testified that when the policy was issued, it was mailed to his office, which apparently was the same as that of "The Lawrence Wilson Company" in downtown Tulsa's First National Building; that after receiving it, he didn't pay any attention to the address of the insured appearing therein, and that he caused Grand Prix' check to be issued for the policy's premium, after he had received a statement for it at said downtown office.

The evidence further showed, that, though Mr. Walmsley had had indications from telephone conversations and correspondence with officials of the garnishee company that its cancellation of the policy was contemplated, no part of the policy's premium was ever tendered, or refunded, to Grand Prix, though there was evidence showing that as early as December 25, 1959, the garnishee company had given its agent, the Langford Agency, credit on its account for the sum of $284.89, for such a refund. Mr. Lee Womack, manager of the garnishee company's Underwriters' Department, testified that when Mr. Walmsley thereafter wrote him that he hadn't received the unearned part of the premium, he "wrote him in turn and sent him a photostatic copy of our ledger sheet of our account with Langford, which transaction Mr. Walmsley is well acquainted with in the insurance business, and told him this settlement had been made with Langford, and told him to make a demand on his insurance agent for the re-

turn premium." Why the Langford Agency never remitted the "return premium" to Grand Prix does not appear.

At the close of the evidence, the court rendered judgment in favor of the garnishee company, and the garnishors have perfected the present appeal.

■ Garnishors submit their argument for reversal under two propositions, which we will consider in reverse order. Proposition II is:

"Where by insurer's mistake an erroneous address is listed for insured in the policy and subsequent notice of cancellation mailed to said insured at said erroneous address is therefore not received, the policy is not cancelled by the mailing of said notice."

Garnishors concede that under recent decisions such as Midwestern Insurance Company v. Cathey (Okl.) 262 P.2d 434, it is not necessary for an insured to actually receive notice of cancellation of a policy containing provisions like those of the subject one quoted supra, but that all that is required is proof of mailing the notice to the "address shown in the policy * * *". In this connection, see the discussion in State Farm Mutual Automobile Insurance Co. v. Chaney (U.S.C.A. 10th Cir.) 272 F. 2d 20, and the Annotation at 64 A.L.R.2d 982, 1000. Garnishors seek to extricate this case from operation of the principles applied in those cases, however, by arguing that here the notice of cancellation was not mailed to any address given the garnishee by the insured, Grand Prix. There position seems to be that, as far as the evidence reveals, the writing into the policy of an incorrect address of the garnishee on 51st Street could only have occurred through the negligence of the garnishee or one of its hereinbefore mentioned agents. They concede that if Grand Prix had discovered the mistake in the address, it would have been under a duty to have notified the garnishee thereof, but they say that its failure to make such discovery was not negligence on its part, and, under certain expressions quoted

from Pfiester v. Missouri State Life Insurance Co., 85 Kan. 97, 116 P. 245; Commercial Casualty Insurance Co. v. Connellee, 156 Okl. 170, 9 P.2d 952, and other cases, should not render it responsible for not having received the cancellation notice. We do not think the cases cited by garnishors are applicable. As pointed out by the garnishee, the two above cited cases were actions in which reformation of policies was sought, while reformation was no part of the present case. In essence, the same argument advanced by garnishors was advanced in Raiken v. Commercial Casualty Ins. Co. (N.J.Sup.), 135 A. 479, in which the court said:

"* * * The plaintiff's own evidence discloses that such notice was duly sent to the address stated in the policy. This was attemped to be overcome by proof on behalf of the plaintiff that the company had been notified before issuing the policy to the plaintiff of the correct address of Mrs. Raiken, and that they failed to incorporate it in the insurance contract. We must deal with the policy as it is written and not as the plaintiff would have it modified. A court of law is powerless to give force to the contracts of parties except as they appear in the writings themselves. The plaintiff was bound by the policy as it was written unless on its receipt she promptly examined it and notified the company of the incorrect address and refused to accept it. Crescent Ring Co. v. Travelers' Indemnity Co. (N.J.Err. & App.) [102 N.J.L. 85] 132 A. 106. Whether the policy could have been reformed to incorporate the true address (as plaintiff contends it should have been) in a court of equity, is beside the point. She must stand upon her rights as they are made in her contract."

Notice also other cases cited in footnote 2 on page 572 of the Annotation beginning at 63 A.L.R.2d 570. In view of the above, we can only conclude that in the instance of a policy containing the quoted provisions of

the present one, the fact that the address shown in the policy is an incorrect one is immaterial, if the notice of cancellation is properly mailed to it; and such mailing, under the terms of the policy, constitutes "sufficient proof of mailing." There is no merit to garnishors' inference that since Mr. Langford and Mr. Brown were, on the afore-mentioned occasion before the policy was written, at the site of the go-cart track, it should be assumed that they had knowledge, imputable to the garnishee, of Grand Prix' correct address. As hereinbefore indicated, neither of these men appear to have resided in Tulsa and it was never shown that either was familiar with Tulsa addresses or streets, or had any independent knowledge concerning the address of the track. Furthermore, garnishors point to no statute in this jurisdiction which renders' the insurer's knowledge of the insured's address material, as is the case in at least one jurisdiction. In this connection see Skipper v. Federal Insurance Co., 233 La. 779, 116 So.2d 520. Nor is there any merit' to the garnishors' plea that, by not receiving the cancellation notice, Grand Prix "sustained prejudice in not being able to secure a new insurance policy * * *, before * * *" the subject accident occurred. There was evidence introduced which tended to show that, almost five months before the accident occurred, at least one official of Grand Prix knew that the cancellation notice had been mailed.

■ The garnishors' "PROPOSITION I" is:

"By its failure to return or tender the unearned premiums, garnishee is estopped to assert cancellation of the policy and has waived any objections thereto."

In support of this proposition, garnishors cite cases such as Great American Reserve Insurance Co. v. Strain, Okl., 377 P.2d 583, and The Connecticut Fire Insurance Co. v. Johnson, Okl., 293 P.2d 607, in which the insurer sought to defend actions on policies, after loss thereunder, on the ground of

fraud, and where no effort had been made toward cancellation before the loss. These cases are not applicable here, where under the provisions of the policy, return of the unearned premium was not a condition precedent to cancellation, and the insured complied with those provisions long before the occurrence of anything giving rise to a claim thereunder. Here the policy specifically provided, as hereinbefore shown, that "* * * payment or tender of unearned premium is not a condition of cancelation." Under such circumstances, the weight of authority is to the effect that such a policy may be cancelled without return, or tender, of the unearned premium. See Nance v. Blue Ridge Insurance Co., 238 S.C. 471, 120 S.E.2d 516; Department of Labor, etc. v. Northwestern Mut. Fire Ass'n, 13 Wash.2d 288, 124 P.2d 944, and the Annotation at 16 A.L.R.2d 1200, 1205ff. Ampy v. Metropolitan Casualty Ins. Co. of N. Y., 200 Va. 396, 105 S.E.2d 839, involved a policy with cancellation provisions identical, in all material respects, with those hereinbefore quoted. There, the court said:

"The failure of the general agent to return unearned premium to the insured at the time of the cancellation has no effect on its cancellation. Notice of cancellation, when given in accordance with the terms of the policy and the statute, terminates the policy ipso facto, and the obligation of the agent to return unearned premium creates a debtor-creditor relationship."

As already indicated, no Oklahoma Statute has been injected into this case; consequently consideration as to compliance therewith is no part of our application of the quoted rule, and the matter hinges solely on "the terms of the policy * * *". We therefore conclude that upon application of this general rule to this case, cancellation of the policy was effective before the accident at the go-cart track, without the Langford Agency's return of the unearned portion of the premium.

In view of the foregoing, the judgment appealed from herein is neither contrary to

law nor to the evidence, and must be affirmed. It is so ordered.

HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.