Hillsborough,
No. 5189.

ROBERT S. GERARD &a.

v.

MASSACHUSETTS BONDING & INSURANCE COMPANY &a.

Argued May 5, 1964.
Decided September 10, 1964.

2

*Leonard & Leonard* and *McLane, Carleton, Graf, Greene & Brown* and *G. Peter Guenther* (*Mr. Guenther* orally), for the plaintiffs.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Robert F. McGinnis* (*Mr. McGinnis* orally), for the defendant Massachusetts Bonding and Insurance Company.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Shane Devine* orally), for the defendant American Insurance Company.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant Seaboard Surety Company.

BLANDIN, J.   The issues before us concern the obligations of each of the several defendants to satisfy judgments obtained by the plaintiffs against William E. Stacknis, the operator of the car responsible for the plaintiffs' injuries.   The Court made the following findings of fact and rulings of law:

"On June 2, 1959 the plaintiffs recovered judgments against one William E. Stacknis in this court for bodily injury and property damage sustained in an accident in Chelmsford, Massachusetts, on March 26, 1954, when an automobile operated by William Stacknis was in collision with an automobile operated by Robert Gerard.   The plaintiffs and William Stacknis were residents of New Hampshire.   These judgments remain unsatisfied.

"The automobile which Stacknis was operating was one he rented from Merrimac U-Drivit Auto Rental Co., Inc., the owner, a Massachusetts corporation hereinafter referred to as Merrimac.   Stacknis rented the automobile at Merrimac's Nashua, New Hampshire place of business under a written contract between himself and Merrimac, which provided that Merrimac would furnish Stacknis with certain liability insurance coverage; the agreement also provided that Stacknis would not take the automobile from New Hampshire without the written consent of Merrimac, and if he did, the insurance coverage would be automatically voided and of no effect.   Mr. Stacknis did not have written consent from Merrimac to take the car from New Hampshire;   the evidence does not establish whether or not he had oral consent.

"At the time of the accident there was in force a bond issued by Merrimac and certain allied auto rental companies, as principals, and Seaboard Surety Company, as surety, for the benefit of those holding liability insurance certificates issued to them by any one of the principals.   This bond was conditioned upon payment of any claim or judgment against any certificate holder, to the extent of the limits set forth in the certificate, arising out of liability imposed upon the certificate holder as operator of a vehicle owned by a principal.

"The provisions of the contract between Merrimac and Stacknis relative to Merrimac furnishing liability insurance constituted a certificate within the meaning of the Seaboard bond.   However,

that certificate became void when Stacknis took the automobile from New Hampshire without the written consent of Merrimac, and consequently neither Merrimac, as principal, nor Seaboard, as surety, became obligated under the terms of the bond to pay the judgments against Stacknis. What, if any, effect the New Hampshire motor vehicle and financial responsibility law, hereinafter referred to as the financial responsibility law, had as to this bond will be considered later.

"There was also in force at the time of the accident an automobile combination policy issued by American Insurance Company, hereinafter referred to as American, and affording liability coverage to Merrimac as to its rental automobiles. This policy was issued at the request of Seaboard, because Seaboard's bond would not meet filing requirements in certain states, including New Hampshire, and Seaboard agreed to indemnify American relative thereto. This policy, by its terms, covered the named insured and also any person 'while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.' Since the 'actual use of the automobile' by Stacknis, that is, the use at the time of the accident, was not with the permission of Merrimac, this policy, by its terms, does not cover.

"The plaintiffs contend that the American policy and the Seaboard bond are subject to the requirement as to a liability policy or bond as set forth in R. L., c. 122, s. 1 VII and VIII, to the effect that such a policy or bond shall cover not only the owner of a vehicle, but also any person responsible to the owner for the operation of his automobile, who has obtained possession or control thereof with his express or implied consent; they further claim that this requirement is met if the person initially obtains possession with the consent of the owner, even if the use at the time of the accident was expressly forbidden by the owner. If this is the proper construction of that requirement, which has been in force since 1937, then it would not have been necessary in 1941 for the Legislature to enact the following provision, which has been in effect since its enactment, as a requirement of a motor vehicle liability policy with respect to accidents happening in New Hampshire. That provision reads as follows: 'The insurance applies to any person who has obtained possession or control of the motor vehicle of the insured with

his express or implied consent, even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision, however, shall not apply to the use of a motor vehicle converted with intent wrongfully to deprive the owner of his property therein.' (1941 Laws 198:1, VI; R. L., 122:16, VI) Further, if sections VII and VIII of R. L., *c.* 122, *s.* 1 require coverage when the initial possession is with the consent of the owner, without qualification, then they require coverage when the initial possession is with the consent of the owner, even though the vehicle is subsequently converted by the user with the intent of depriving the owner of his property therein, which would be broader coverage than required by the above quoted 1941 amendment relative to coverage for accidents happening in New Hampshire. These provisions, that is, sections VII and VIII of R. L., *c.* 122, *s.* 1, are to be interpreted with reference to the other provisions of that chapter, and so interpreted it appears that it was intended that they should furnish coverage to any person responsible to the owner for the operation of his automobile, who has obtained possession or control thereof with his express or implied consent, *for the use to which the vehicle is being put at the time of the accident.* It is therefore ruled that the financial responsibility law did not affect the provision in the American policy that the actual use of the automobile must be with the permission of Merrimac, nor, even if that law was applicable to the Seaboard bond, the exclusion from the benefits of that bond of one whose certificate of liability insurance has been rendered void by leaving the State.

"On July 20, 1953 the Massachusetts Bonding and Insurance Company, hereinafter referred to as Massachusetts Co., issued to William Stacknis at Nashua, New Hampshire an operator's liability policy; this policy gave as the address of Mr. Stacknis the Canaan Inn, Canaan, New Hampshire. The policy contained the following provision: 'This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period.' In January, 1954, Massachusetts Co. sent a cancellation notice by registered mail to

William Stacknis at his address set forth in the policy, advising him of cancellation as of February 11, 1954. This registered letter was not delivered to Mr. Stacknis, but was returned to Massachusetts Co. Mr. Stacknis was not living at the Canaan address when the notice was sent; he did not have actual notice of the attempted cancellation until some time after the accident. The notice having been by registered mail rather than ordinary mail, and having been returned to Massachusetts Co., it was not sufficient to cancel the policy. The Massachusetts Co. policy provides coverage to the extent of the policy limits."

It then decreed:

"1. American Insurance Company is under no obligation to make any payment on either of the plaintiffs' judgments against William Stacknis.

"2. Seaboard Surety Company is under no obligation to make any payment on either of the plaintiffs' judgments against William Stacknis.

"3. Massachusetts Bonding and Insurance Company is obligated to pay the plaintiffs' judgments to the extent of the limits of its policy."

The initial force of the plaintiffs' argument is directed at the proposition that the financial responsibility law in effect at the time of the accident (R. L., c. 122, as amended, now RSA ch. 268) required the defendants American Insurance Co. and Seaboard Surety Co. to extend coverage to Stacknis. The omnibus clause of American's policy provides:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

When Stacknis rented the automobile from Merrimac U-Drivit, which was located in Nashua, New Hampshire, he executed a rental agreement that he "will not take said vehicle from the State in which it is hired without the written consent of the Lessor." The agreement further stipulated:

"(11) . . . and/or if this vehicle is taken from the State in which it is hired without the written consent of the Lessor, the said vehicle is being operated without the knowledge, consent and permission of the Lessor and the Lessee is subject to the penalties therefor and the insurance coverage offered hereunder

is automatically voided and of no effect . . . ."

It is undisputed that Stacknis did not have written consent and the Court has also found that the plaintiffs have not sustained the burden of showing that he had oral consent. *Standard &c. Ins. Co.* v. *Gore*, 90 N. H. 277. The record clearly demonstrates that the Court's conclusions on this issue are warranted. The fact that Stacknis' testimony that he had oral consent was uncontradicted did not require its acceptance (*Bill* v. *Company*, 90 N. H. 453; *Anctil* v. *Dupont*, 96 N. H. 501, 503), even if it be considered material — a point upon which it is unnecessary to express an opinion. The plaintiffs' exception to the Court's findings on this issue is therefore overruled.

The plaintiffs also argue ingeniously that the defendants Seaboard and American are subject to R. L., *c.* 122, as amended, and that under section 1 VII, VIII of chapter 122, *supra*, they are bound to extend coverage even though it be established that Stacknis was operating in Massachusetts at the time of the accident, without Merrimac's consent. The pertinent parts of these sections were as follows:

"VII. 'Motor Vehicle Liability Policy,' a policy of liability insurance which provides: (a) indemnity for or protection to the insured and any person responsible to him for the operation of the insured's motor vehicle, trailer, or semi-trailer who has obtained possession or control thereof with his express or implied consent, against loss by reason of the liability to pay damages to others for damage to property . . . or bodily injuries, including death at any time resulting therefrom, accidentally sustained during the term of said policy by any person other than the insured . . . arising out of the ownership, operation, maintenance, control, or use within the limits of the United States of America or the Dominion of Canada of such motor vehicle . . . and (b) which further provides indemnity for or protection to the named insured . . . as a result of accidents which occur in New Hampshire . . . .

"VIII. 'Motor Vehicle Liability Bond,' a bond conforming to the provisions of section 17 and conditioned that the obligor shall within thirty days after the rendition thereof satisfy all judgments rendered: (a) against him or against any person responsible to him for the operation of the obligor's motor vehicle, trailer or semi-trailer who has obtained possession or control thereof with his express or implied consent, in actions to recover damages for damage to property of others or bodily

injuries, including death at any time resulting therefrom, accidentally sustained during the term of said bond by any person other than the obligor . . . arising out of the ownership, operation, maintenance, control, or use within the limits of the United States of America or the Dominion of Canada of such motor vehicle . . . and (b) which further provides indemnity for or protection to the obligor . . . as a result of accidents which occur in New Hampshire." The plaintiffs assert that these provisions are mandatory and cannot be avoided by any stipulations in the policies. *Continental Ins. Co.* v. *Charest*, 91 N. H. 378; *Farm Bureau &c. Ins. Co.* v. *Garland*, 100 N. H. 351.

It appears that section 1 VII, VIII, *supra*, was first enacted by Laws 1927, *c.* 54, section 1 II, III, and was broadened somewhat by Laws 1937, chapter 161. However, Laws 1941, *c.* 198, *s.* 1 (R. L., *c.* 122, *s.* 16), added this provision: "REQUIRED PROVISIONS. A motor vehicle liability policy shall be subject, *with respect to accidents which occur in New Hampshire* and within limits of liability required by this chapter, to the following provisions which need not be contained therein . . . III. With respect to accidents which occur within this state and subject to the minimum limits of liability validly made under the authority of paragraph VII of section 1 of this chapter the policy is to be interpreted with reference hereto and the liability of the company under the policy shall thereby become absolute upon the occurrence of such an accident; no statement made by the insured or on his behalf, and no violation of exclusions, conditions, other terms, or language contained in the policy, and no unauthorized or unlawful use of the vehicle except as provided in paragraph VI of this section, whether or not a premium charge has been made and paid shall operate to defeat or avoid the policy so as to bar recovery for such accidents within said limits of liability . . . (Emphasis supplied).

"VI. The insurance applies to any person who has obtained possession or control of the motor vehicle of the insured with his express or implied consent even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision, however, shall not apply to the use of a motor vehicle converted with the intent wrongfully to deprive the owner of his property therein."

The Trial Court succinctly stated that if the plaintiffs' conten-

tions were correct, there was no need for the Legislature to enact Laws 1941, chapter 198, *supra*. He further added that if under R. L., *c.* 122, *s.* 1 VII, VIII, coverage is required without qualification when the initial possession is with the owner's consent, then even though the vehicle were subsequently converted, there would be broader coverage *without* the state of New Hampshire than is required by Laws 1941, chapter 198, *within* the state. It seems improbable the Legislature had any such intent.

The purpose of the financial responsibility law "'to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles' (*Hartford Ind. Co.* v. *Wolbarst*, 95 N. H. 40, 43) . . . is not without limits." *Hardware &c. Cas. Co.* v. *Tobyne*, 98 N. H. 318, 322. A liberal construction of this statute does not require that we expand its meaning beyond what appears to have been the legislative intent. *Davis* v. *Company*, 88 N. H. 204. In short, we agree with the Trial Court's interpretation that R. L., *c.* 122, *s.* 1 VII, VIII did not provide coverage for accidents happening outside this state where the operation was without the express or implied consent of the owner (R. L., *c.* 122, *s.* 16 VI), and overrule the plaintiffs' exceptions thereto.

A further matter to be considered is the plaintiffs' contention that American and Seaboard, by their policy and bond respectively, provided coverage regardless of the application of the financial responsibility law. As to American, the policy provided for liability only in case "the actual use of the automobile is by the named insured or with his permission." Construing the words "actual use" reasonably, the burden was on the plaintiffs to show that the use to which the car was being put at the time of the accident was permitted. *Hinchey* v. *Surety Company*, 99 N. H. 373, 378; *Travelers Ins. Co.* v. *Greenough*, 88 N. H. 391; 7 Appleman, Insurance Law and Practice, *s.* 4367, *pp.* 313, 314. Since it is established that Stacknis' use when the accident occurred was expressly forbidden, the claim against American fails. *Hinchey* v. *Surety Company, supra*.

As to Seaboard, Stacknis' contract or rental certificate with Merrimac expressly stipulated that if the car were taken from the state "without the written consent of the Lessor . . . the insurance coverage offered hereunder is automatically voided and of no effect . . . ." Therefore, Merrimac, which has not been sued, is not liable to the plaintiffs. Throughout the proceedings,

the relationship between Merrimac and Seaboard is that of principal and surety. They are so described in the bond and in the plaintiffs' brief. The bond and the certificate to which the bond refers must be construed together. *Paisner* v. *Renaud*, 102 N. H. 27, 29; *Lavigne* v. *Lavigne*, 87 N. H. 223, 225; *Rivier College* v. *St. Paul Fire Ins. Co.*, 104 N. H. 398, 401. Nothing in the correspondence or elsewhere in the record remotely suggests that the contracting parties intended that the surety Seaboard should assume a substantially greater obligation than its principal, Merrimac. Rather, the entire transaction appears based on the liability of Merrimac, as written in the certificate. No reason appears why Seaboard as surety should have intended to take on a burden greater than it was legally bound to do.

We believe that a fair construction of these instruments compels the conclusion that the surety should be liable only if the principal were also. Seaboard did not contract to cover a holder of a void certificate, as was Stacknis, to whom Merrimac was not liable. A policy canceled and void before an accident cannot be the basis of liability. *Farm Bureau Ins. Co.* v. *Martin*, 97 N. H. 196, 200. Nor do we believe in the circumstances here that liability can be predicated upon a void certificate. In short, the principal Merrimac not being liable, the surety Seaboard cannot be called upon to pay. *Paisner* v. *Renaud*, 102 N. H. 27, 29; *Lavigne* v. *Lavigne*, 87 N. H. 223, 225; 11 Appleman, Insurance Law and Practice, *s.* 6791, *pp.* 688-689.

To hold otherwise would be to ignore the reasonable meaning of the bond and certificate construed together and to say that initial permission by Merrimac was all that was required to give coverage, regardless of what happened afterwards. This is not our law. Nor do we believe it represents the better view. 7 Appleman, Insurance Law and Practice, *s.* 4370. There was nothing illegal or contrary to public policy in the agreements made between Stacknis and Merrimac and between Merrimac and Seaboard. In such a situation, we do not believe justice would be served by the Court's substituting the plaintiffs' idea of what the agreements should have meant for what they did mean. It therefore appears that the plaintiffs' exception to the Court's ruling upon this issue cannot prevail.

The final question arises from the defendant Massachusetts

Bonding Company's exception to the Court's finding that the registered letter sent by it to Stacknis canceling its policy was not sufficient to do so, and the consequent ruling that the defendant was liable to pay the plaintiffs' judgments to the extent of the policy. We believe that we need not detail the rather lengthy evidence on which the Court found that such a notice was actually sent. A careful examination of the record convinces us that such a conclusion was warranted. The policy contained the provision authorizing cancellation by either party, as follows: "This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective."

Such a condition appears to be a standard form for policy cancellation. Annot. 64 A.L.R. 2d 982, 1000. The majority view is that where it is found that proper notice is sent, actual receipt by the policyholder of the notice is not required to effect cancellation. Annot. 64 A. L. R. 2d, *supra, pp.* 1000-1002. While the issue has never been squarely raised here, the plaintiffs themselves state that "the case of *Allstate Insurance Co.* v. *Culver*, 100 N. H. 16 (1955) appears to hold that mailing alone is enough." We agree. The *Allstate* opinion, page 19, cited approvingly authorities which upheld this view.

There are good reasons for such a position. The burden on the company to locate a policyholder would be heavy while the insured may readily advise the company of any change of address. If, as against this, the rule seems harsh as to the insured, we face again the fact that the parties made a legal agreement for which the Court should not substitute its own concept. We adhere to the majority view that actual receipt of a notice is not necessary to effect cancellation.

However, the plaintiffs insist that the Trial Court correctly found and ruled that "The notice having been by registered mail rather than ordinary mail, and having been returned to Massachusetts Company, it was not sufficient to cancel the policy. The Massachusetts Company policy provides coverage to the extent of the policy limits." While we are aware of minority authority tending to support this view (*Werner* v. *Commonwealth Casualty Co.*, 109 N. J. L. 119; Annot. 64 A.L.R. 2d

12

982, 987-988, 993), we do not believe that it rests on a sound and logical basis. The Massachusetts Bonding Company contract *states* without qualification and in simple, unequivocal language that the policy could be canceled "by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective." The defendant Massachusetts Bonding Company did send such a notice, as the contract requires. The fact that it was sent by registered mail, which is ordinarily considered a safer method than ordinary mail, should not militate against it. *Westmoreland* v. *General Acci. Fire & Life Assur. Corp.,* 144 Conn. 265; *Midwestern Ins. Co.* v. *Cathey* (Okla.), 262 P. 2d 434; see also, Annot. 64 A.L.R. 2d, *supra,* 982, 1017. To hold, as the plaintiffs would have us do, that the notice of cancellation was not effective in the absence of actual receipt because it was sent by registered mail, would be for the Court to rewrite the instrument for the parties. This we decline to do.

In conclusion, it appears that the defendants were not required under R. L., *c.* 122 to furnish the coverage sought to be imposed by the plaintiffs. Nor did any of them contract to do so. Therefore, they are not bound to satisfy the plaintiffs' judgments.

What we have said renders unnecessary consideration of other matters and, no errors appearing in the record, the order is

> *Plaintiffs' exceptions overruled;*
> *defendant Massachusetts Bonding and*
>   *Insurance Company's exception*
>   *sustained;*
> *judgment for all the defendants.*

All concurred.