FRANK LAXTON, JR.

*v.*

NATIONAL GRANGE MUTUAL INSURANCE COMPANY

(No. 12509)

Submitted April 26, 1966.     Decided June 14, 1966.

*Mann, Lynch & Mann, Jack A. Mann,* for appellant.

*West, Blackshear & Goode, Marshall G. West,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit court of Wyoming County, involves a civil action in which Frank Laxton, Jr., the insured, sued National Grange Mutual Insurance Company, the insurer, upon an insurance policy which covered the plaintiff's 1963 Chevrolet automobile and which insured it against damage or loss, subject to conditions stated in the policy.

The policy was issued on August 6, 1964, by Gilbert Goode of Goode Insurance Agency of Pineville, in Wyoming County. The automobile was severely damaged as a result of an accident which occurred on November 18, 1964, while it was being operated by Carolyn Kay Laxton, daughter of the insured. In a jury trial of the action, the insurer defended on the basis of an alleged cancellation of the policy before the date of the accident.

The defendant, the insurer, has appealed to this Court from a final judgment order entered on May 17, 1965, by which the trial court refused to set aside a jury verdict in favor of the plaintiff for $2,000 and the judgment previously entered on the verdict.

The primary question presented for decision on this appeal is whether, prior to the date the insured automobile was damaged, the insurer had cancelled the policy pursuant to the following policy provision:

"This policy may be canceled by the insured named in Item 2 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the insured named in Item 2 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing.

"If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation."

By way of cross-assignment of error pursuant to Rule XI of the Rules of this Court, the plaintiff asserts that the defendant waived its defense of alleged cancellation by failing to plead such defense by a proper pleading under oath, in conformity with the requirements of Code, 1931, 56-4-21. That statute, generally speaking, requires that in any action on an insurance policy, whether the action be covenant, debt or assumpsit, certain defenses must be asserted affirmatively by a statement in writing under oath. In this con-

nection, the plaintiff relies upon *Christian* v. *State Farm Mutual Automobile Insurance Company*, 144 W. Va. 746, 110 S. E. 2d 845, and prior cases which state that these statutory requirements are mandatory. We believe that the procedural provisions of this statute have been superseded by the West Virginia Rules of Civil Procedure which became effective July 1, 1960. The *Christian* case and other cases cited in behalf of the plaintiff were decided before that date. R. C. P. 1 is, in part, as follows: "These rules govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature whether cognizable as cases at law or in equity, * * *." R. C. P. 8 (c) deals with affirmative defenses, but does not provide that such defenses must be raised by a pleading under oath. R. C. P. 11 provides that, except where otherwise provided by the Rules, pleadings need not be verified or accompanied by affidavit. The Rules embrace actions such as that involved in this case. The answer to the complaint affirmatively pleaded the alleged cancellation. The answer was not required by the Rules to be under oath. The cross-assignment of error, therefore, is not well taken.

The policy contained a loss payable clause for the benefit of General Motors Acceptance Corporation. It is the contention of the defendant insurance company that, on September 9, 1964, a notice of cancellation was mailed from its offices in Keene, New Hampshire, to the plaintiff at Hatcher, West Virginia, which was the plaintiff's address shown on the insurance policy; and that on the same day a copy of the cancellation notice was mailed to General Motors Acceptance Corporation at 1031 Quarrier Street, Charleston, West Virginia. A carbon copy of the alleged notice of cancellation appears in the record as a part of the evidence introduced in behalf of the defendant at the trial of the case. It is dated September 9, 1964, and states that the cancellation was to be effective on September 24, 1964, which latter date was almost a month before the date the automobile was involved in the accident.

It will be noted that the cancellation provision of the policy, previously quoted in this opinion, states that the

insured may cancel the policy "by mailing to the company written notice stating when thereafter the cancelation shall be effective." Similarly it states that the company may cancel the policy "by mailing to the insured * * * written notice stating when not less than ten days thereafter such cancellation shall be effective." The policy further provides: "The mailing of notice as aforesaid shall be sufficient proof of notice." In other words, the policy provides that it may be cancelled, whether by the insured or by the company, by mailing a written notice of cancellation, and that proof of mailing shall constitute sufficient proof of notice. This language of the policy becomes material in this case because the plaintiff denies having received from the company any notice of cancellation.

In connection with an exhaustive annotation of the subject of cancellation of insurance policies by mail, the following summary is stated in 64 A.L.R. 2d, Section 10, page 995: "Where the clause applicable to the insurer's right to cancel the policy provides for the exercise of such right by mailing of notice to the insured's address, or contains substantially similar language, the unanimous rule is that the actual receipt by the insured of such notice is not a condition precedent to a cancellation of the policy by the insurer, and the mere mailing of the letter containing a notice of cancellation is sufficient to effect a cancellation." In the same volume at page 1000, Section 15 (a), it appears that the rule stated above is applied with peculiar force where, as in the instant case, the notice of cancellation states a specific date in advance when cancellation will be effective, and where, as in the instant case, the policy specifically provides that the mailing of notice of cancellation will be regarded as sufficient proof of notice.

The cancellation provision of the policy here in question is referred to as the standard cancellation provision. In relation to such a provision, the following is stated in 29 Am. Jur., Insurance, Section 386, page 738: "Such a provision is valid and is not contrary to public policy. A majority of the cases hold that under such provision the actual receipt of the cancellation notice by the insured is not a

condition precedent to the cancellation of the insurance by the insurer in view of the fact that the express terms of the contract sanction the sufficiency of a notice deposited in the mail. In other words, these courts proceed upon the basis that the parties by their contract in effect constituted the government, in its business of operating the mails, the agent of the insured for the purpose of receiving the notice of cancellation. By mailing the cancellation notice, the insurer has fully complied with the standard policy provision as to notice of cancellation, and the insurer is under no obligation to use reasonable diligence to get actual notice of cancellation to the insured."

The A. L. R. annotation lists many cases from throughout the country in support of the general rules stated in the quotations previously appearing in this opinion. Some of the more recent decisions to the same effect are *Mackiw, Admx.* v. *Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co.,* 201 Pa. Super. 626, 193 A. 2d 745; *Gilmore* v. *Grand Prix of Tulsa Corporation et al.,* (Okl.) 383 P. 2d 231; *Aetna Casualty and Surety Co.* v. *Simpson,* (Fla. App.) 128 So. 2d 420; *Jensen* v. *Traders & General Insurance Co.,* 52 Cal. 2d 786, 345 P. 2d 1; *Riddick* v. *State Capital Insurance Co.* (4th Cir. Va.), 271 F. 2d 641; *Diamond T. Utah, Inc., et al.* v. *Canal Insurance Co.,* 12 Utah 2d 37, 361 P. 2d 665; *Gerard* v. *Massachusetts Bonding & Insurance Co. et al.,* 106 N.H. 1, 203 A. 2d 279; *Medford Insurance Co.* v. *Weimer,* (Tex. Civ. App.) 385 S. W. 2d 589; *Harms* v. *The Travelers Indemnity Co.,* 39 Ill. App. 2d 248, 188 N. E. 2d 356; *Anderson* v. *Preferred Risk Mutual Insurance Co.,* 107 Ga. App. 293, 129 S. E. 2d 816; *Ampy* v. *The Metropolitan Casualty Insurance Company of New York,* 200 Va. 396, 105 S. E. 2d 839; *New Amsterdam Casualty Company* v. *Russell,* 102 Ga. App. 597, 117 S. E. 2d 239; *Moore* v. *Palmetto Bank and Textile Insurance Company,* 238 S. C. 341, 120 S. E. 2d 231.

In line with the decided weight of authority, we are of the opinion that the language of the insurance policy relating to cancellation is clear and unambiguous, not contrary to public policy and that if, in this case, the insurance com-

pany has sufficiently proved the mailing of the notice of cancellation addressed to the plaintiff at his address as it appears on the policy, it is not sufficient from the plaintiff's standpoint for him to prove merely that he did not receive such notice. It therefore becomes necessary to consider the proof bearing upon the question of mailing.

At the conclusion of all the evidence introduced at the trial, counsel for the defendant moved for a directed verdict in its favor on the ground that, on the whole evidence, there was no proper issue of fact for jury determination on the question of cancellation. The court overruled this motion and submitted that issue, along with others, to the jury for its determination. The same question was raised in behalf of the defendant in its motion to set aside the verdict and the judgment entered thereon, and to grant it a new trial, which motion was overruled by the trial court as we have stated previously in this opinion. The basic question presented on this appeal, therefore, is whether on the issue of cancellation, the verdict of the jury, approved by the trial court, is warranted by the law and the evidence.

We are fully aware of the well-settled general principles pertaining to the weight which this Court must accord to a jury verdict, approved by the trial court, particularly when the sufficiency of the evidence turns on the weight thereof or on the credibility of witnesses. *Miners' and Merchants' Bank* v. *Gidley*, 150 W. Va. 229, pt. 3 syl., 144 S. E. 2d 711. We must resolve every reasonable and legitimate inference fairly arising from the evidence in favor of the party in whose favor the verdict was rendered. *Bolling* v. *Clay*, 150 W. Va. 249, pt. 1 syl., 144 S. E. 2d 682. A verdict approved by the trial court will not be set aside on the ground that it is contrary to the evidence unless in that respect it is clearly wrong. *Poe* v. *Pittman*, 150 W. Va. 179, pt. 6 syl., 144 S. E. 2d 671.

Marilyn Baker's testimony was taken in the form of a deposition at Keene, New Hampshire, and read to the jury at the trial. At the time she testified, she was employed and for four and one-half years had been employed by the

defendant at its offices in Keene, New Hampshire. She testified that her position was clerk typist; that, as a part of her duties, she sends out all cancellation notices; that she prepared the cancellation notice, a copy of which was made a part of the record in this case; that she caused it to be mailed; that she followed the regular office procedure in connection with the preparation and mailing of the notice; and that, at the direction of S. P. Fisher, she signed his name to the cancellation certificate or notice, though she forgot to append her own initials, in accordance with her usual custom, beneath the name of S. P. Fisher.

The deposition of S. P. Fisher also was taken at Keene, New Hampshire, and read to the jury at the trial as a part of the evidence in behalf of the defendant. He testified that, at the time his deposition was taken, he was employed by the defendant in its offices at Keene, New Hampshire, in the capacity of automobile underwriter; that he had been employed by the defendant for about four and one-half years; that as part of his duties he issues or causes to be issued notices of cancellation of insurance policies in behalf of the defendant; and that, in accordance with the regular office routine or practice in such cases, he requested Marilyn Baker to prepare and mail the cancellation notice to the plaintiff, a copy of which was identified by him and made a part of the record. He testified as follows concerning the regular office routine or practice in relation to cancellation of insurance policies: "When I do determine that the policy does not meet our requirements I give it to the girl who sends out the notices and cancellations and these forms are prepared for the insured, a copy for the insured, one for the agent, and the mortgagee. She types it up and she attaches the certificate of mailing to the insured's and the mortgagee's copies with the envelope. They are sent to our mailing department who in turn take them over to the Post Office where they are stamped by the Post Office and returned to the Company." S. P. Fisher further testified that the notice of cancellation was mailed to Frank Laxton, Jr., at Hatcher, West Virginia, that being his post office address shown on the policy, and that the letter containing the no-

tice of cancellation was never returned to the company by the post office department. The witness identified a post office certificate of mailing which states that, on September 9, 1964, "One piece of ordinary mail," addressed to Frank Laxton, Jr., Hatcher, West Virginia, was received for mailing. A Keene, New Hampshire, post office cancellation stamp appears on the face of the certificate of mailing. A similar certificate of mailing in relation to General Motors Acceptance Corporation, 1031 Quarrier Street, Charleston, West Virginia, was identified by the witness. Both certificates were introduced as a part of the testimony of S. P. Fisher and made a part of the record. These certificates constitute peculiarly forceful corroboration of the testimony of Marilyn Baker and S. P. Fisher to the effect that, on September 9, 1964, notices of cancellation were mailed to the insured and to General Motors Acceptance Corporation, respectively, at their proper addresses. Gilbert Goode, the local agent, testified that he received a copy of the cancellation notice by regular mail. He testified that he did not know the exact date he received a copy of the notice but that it was at least five or six days before the cancellation was to be effective.

There is no direct contradiction of the convincing testimony concerning the mailing of the cancellation notice to the insured. Frank Laxton, Jr., the insured, testified that he did not receive any notice of cancellation from the insurance company and that the first time he knew of the company's contention that the policy had been cancelled was when he received information to this effect from Gilbert Goode, the local agent, about fifteen days after the automobile was involved in the accident.

Herman Meadows, a witness for the plaintiff, testified that he is district sales manager for General Motors Acceptance Corporation in connection with its Charleston, West Virginia, offices. He testified: "We have no record of having received a cancellation notice on this policy." He testified that about forty people work in the Charleston offices; that any one of them might receive a cancellation notice directed to such offices; but that in any event, such

notice, if received, should have been placed in the Frank Laxton, Jr., file, and that "My file does not indicate a cancellation notice has been received." The general effect of this witness's testimony appears to be that as of the date of the trial, March 22, 1965, the records in his employer's Charleston offices did not disclose that a copy of the cancellation notice had been received.

It has been held that, under certain factual circumstances in cases of this character, there may be presented a jury question on the issue of mailing. See *Wright* v. *Grain Dealers National Mutual Fire Insurance Co.* (4th Dist., Va.), 186 F. 2d 956, 960. In that case the court stated: "* * * when the determining factor is mailing rather than receipt of notice, such undisputed and convincing evidence of mailing as is found in this case is not rebutted merely by evidence that the notice was not actually received. If this were not so, there would be little difference in practical effect between the two types of policy, and the uncertainty sought to be avoided in the form of contract before us would still prevail." In *Cherokee Insurance Company* v. *Hardin et al.,* 202 Tenn. 110, 117, 302 S. W. 2d 817, 820, the court stated: "To say that by reason of a presumption that the Post Office performs its official duty, therefore, that the testimony of the addressees that they did not receive this letter creates a permissible inference that the letter was never mailed in spite of the unimpeached, uncontradicted, written, official acknowledgment of the Post Office that it received this letter for transmission by mail to the addressees is, in the opinion of this Court, to assert that which is thoroughly unconvincing and unsound." Similarly, in *Moore* v. *Palmetto Bank and Textile Insurance Co.,* 238 S. C. 341, 348, 120 S. E. 2d 231, 235, the court stated: "The fact that the respondent denied receiving the cancellation notice was not sufficient to support the finding of the jury that the notice had not been mailed, or to support their rejection of the official Post Office receipt of notice of cancellation addressed to the insured."

The testimony of the insured that he did not receive the cancellation notice does not directly contradict the convinc-

ing testimony to the effect that it was mailed. The insured's testimony in this respect "can only go to attack the credibility of those testifying as to its mailing * * *." *Mackiw* v. *Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co.*, 201 P. Super. 626, 637, 193 A. 2d 745, 750.

Apparently, in the absence of statute, the universal rule is that, in case of a cancellation clause in an insurance policy such as that involved in this case, the mailing of notice of cancellation will be regarded as sufficient proof of notice and actual receipt of such notice by the insured need not be shown. An exception to the general rule may arise in instances where a statute requires that actual notice be given. 64 A.L.R. 2d at 1012; 29 Am. Jur., Insurance, Section 386, pages 738-39. The general rule may be regarded as harsh, but the fact remains that the parties in this case have contracted on that basis in clear and unambiguous language and the contract, not being against public policy, must be applied in accordance with the clearly expressed intent of the contracting parties.

For reasons stated in this opinion, we are of the opinion that there was no proper issue of fact for the jury on the question of the mailing of the notice of cancellation; that the verdict of the jury in that respect is against the clear weight and preponderance of the evidence; and that, therefore, the judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury is set aside and a new trial is awarded to the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*