**BEACH TREAT, INC., a Delaware corporation, Plaintiff,**

**v.**

**NEW YORK UNDERWRITERS INSURANCE COMPANY et al., Defendants.**

Superior Court of Delaware, New Castle.

Dec. 29, 1972.

 

OPINION

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

TAYLOR, Judge.

Defendant, New York Underwriters Insurance . Company [New York], issued a standard fire insurance policy covering plaintiff's ice cream stand at Bethany Beach, Delaware, for the period from June 1, 1969 to June 1, 1972. On January 20, 1971, New York undertook to cancel the policy and sent a notice of cancellation directed to plaintiff at the address of plaintiff shown on the policy. Plaintiff had in fact moved in 1969 without notifying New York of the new address and the notice was not forwarded to plaintiff, but was returned to New York on January 25, 1971. New York make no further effort to notify plaintiff of cancellation. On April 6, 1971 the roof of the ice cream stand was damaged apparently by wind storm.[1] On April 9, 1971 plaintiff filed a damage claim and on the same date the local agent for New York sent plaintiff a check in the amount of $52 representing a refund of prepaid insurance premium from the date of the purported cancellation of the policy.

Plaintiff and New York have moved for summary judgment. The issue is whether plaintiff can recover under the insurance policy in view of the purported cancellation of the policy by defendant and plaintiff's failure to notify New York of the change of address.

The insurance policy contained the following language applicable to cancellation by the insurance company:

> "This policy may be cancelled at any time by this Company by giving to the insured a five days written notice of cancellation with or without tender of the excess of paid premium above the pro-rata premium for the expired time,

Frederick Knecht, Jr., of Knecht, Greenstein & Berkowitz, Wilmington, for plaintiff.

Walter P. McEvilly, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for defendant, New York Underwriters Ins. Co.

1. New York does not contend that the damage is not covered by the policy if the policy was in force at the time the damage occurred.

which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The notice which New York sent was entitled "Notice of Cancellation" and stated that the policy "is cancelled as of the Effective Date of Cancellation stated below." On the line titled "Effective Date of Cancellation" were inserted the words "Thirty (30) days after receipt of this notice."

Plaintiff contends that New York did not exercise its power to cancel the policy as that power is set forth in the policy and, therefore, the policy remained in force at the time of the damage. New York contends that the failure to deliver the notice was attributable to plaintiff's failure to inform New York of plaintiff's changed address and that since plaintiff's failure prevented New York from giving the notice plaintiff is estopped to deny the effectiveness of the cancellation.

█ In the absence of fraud or mistake, the power to cancel an insurance policy during the period for which premium has been paid must be founded upon a term of the policy. The policy may empower the insured or the insurer to cancel the policy and may specify the method of cancellation. 3 Richards on Insurance; p. 1366.9, § 414. In order for a cancellation to be operative, the method of cancellation provided in the policy must be strictly complied with. John R. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. 84, 88 (1897); Wright v. Columbia Cas. Co., 137 F.Supp. 775 (S.D.W.Va. 1956), affd. Columbia Cas. Co. v. Wright, 235 F.2d 462 (4 Cir. 1956); Irish v. Monitor Ins. Co., 264 Mich. 586, 250 N.W. 318 (1933); Suennen v. Evrard, 254 Wis. 565, 36 N.W.2d 685 (1949).

The policy in this instance empowered the insurer to cancel the policy at any time "by giving to the insured a five days writ-

ten notice of cancellation . . . ." The policy did not contain language providing that the sending of notice of cancellation to the insured at the address shown on the policy would constitute notice to the insured nor did the policy contain a requirement that the insured inform the insurer of any change in insured's address.

█ In this instance New York did not adhere to the cancellation provision of the policy. It departed from the provision in two respects. First, it deferred the cancellation date from a five day notice as provided in the policy to a thirty day notice. This, of course, was to the benefit of the insured and, therefore, cannot be a basis of objection by insured. Cf. Martin v. Star Publishing Company, 11 Terry 181, 126 A.2d 238 (Del.Supr.1956). The second departure is that while the policy computed the cancellation date from the "giving (of written notice) to the insured", the notice which New York sent computed the cancellation date from the "receipt of this notice." Thus, New York imposed upon itself a limitation not found in the policy. The self imposed limitation meant that the effective date of cancellation could not occur until after the notice had been received.

█ Where an insurer does not take full advantage of the provisions of the policy, but imposes upon itself limitations not found in the policy, it is bound by those limitations.

In Brewer v. Md. Cas. Co., 245 S.W.2d 532 (Tex.Civ.App.1952) the policy provided that it could be cancelled by the insurer "by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective." The policy further provided that the mailing of the notice constituted proof of notice. The insurer sent a notice directed to the insured which provided that the cancellation would be effective five days "after receipt of this notice by you". The in-

sured denied receiving the notice and there was no evidence that the insured had in fact received it. The Court held that since the insurer had elected to provide for a different basis of cancellation than was provided in the policy, the insurer was bound by its own election. Accordingly, since the insurer had made the cancellation dependent upon receipt of the notice and there was no proof of receipt of the notice, there was no cancellation and the policy remained in effect. The Colorado Supreme Court held similarly in Hartford Fire Ins. Co. v. Brothe, 83 Colo. 126, 262 P. 927 (1927). See also Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co., 166 S.W.2d 746 (Tex.Civ.App.1942); Kamille v. Home Fire & Marine Ins. Co. of Calif., 129 Misc. 536, 221 N.Y.S. 38 (1925).

Here the thirty day period after which the cancellation was effective never began to run because it was to commence upon receipt of the notice. New York has not contended that there was such a receipt. Nor has it cited any case where by the terms of the policy or the notice the notice period commenced upon receipt of the notice. It is not necessary to consider whether receipt of notice would be excused if the policy required receipt of the notice, since the policy in this case did not condition cancellation on receipt of the notice.

New York has quoted statements from 43 Am.Jur.2d 458, Insurance, § 411, and 8 Appleman, Insurance Law and Practice, § 5015, concerning the sufficiency of a cancellation notice sent by an insurer to the address of the insured shown in the policy. An examination of the cases appearing in the footnotes accompanying the quotations shows that, with only the exception of Anderson v. Preferred Risk Mutual Insurance Co., 107 Ga.App. 293, 129 S.E.2d 816 (1963) where the terms of the policy were not set forth, all of the cited cases involved policy cancellation provisions which either specifically provided that such mailing was sufficient to constitute notice of cancellation or provided that the notice period which ended in cancellation ran from such mailing. The cases of Gerard v. Massachusetts Bonding & Insurance Company, 106 N.H. 1, 203 A.2d 279 (1964); Midwestern Insurance Company v. Cathey, 262 P.2d 434 (Okl.Supr.1963); and Gulf Insurance Company v. Riddle, 199 S.W.2d 1000 (Tex.Civ.App.1947), specifically cited by New York, contain policy provisions described above. Byard v. Royal Indemnity Co., 49 N.Y.S.2d 60 (N.Y.Supr.1944), also cited by New York does not set forth the policy provision, but merely states that the notice was given in accordance with the policy and does not address itself to the problem under consideration here.

New York cannot in this instance rely upon a presumption that the notice was received within a reasonable time after the sending of the notice because it had actual knowledge that the notice was not received. It acquired this knowledge by the return of the notice by the post office on January 25, 1971 and took no action to give a notice as provided in the policy prior to the damage which occurred on April 6, 1971, approximately three months later. At least under the present facts, it had a duty to make further efforts to communicate with plaintiff concerning the cancellation. Breitenbach v. Green, 186 So.2d 712 (La.App.1966). It had ample opportunity to give actual notice to plaintiff or to give notice literally complying with the cancellation provisions of the policy.

Even if it is assumed that under the policy, cancellation would be effective upon the running of the five day notice period from the date of mailing of a proper notice in accordance with the policy, to plaintiff's address shown in the policy, New York does not prevail. Here, New York departed from the policy by providing that a thirty day notice period preceding cancellation would run from the "receipt" of the notice. While it might be that the word "giving" could be construed to mean the act of "mailing", the word "receipt" cannot be so construed.

■ New York also contends that because of the failure of plaintiff to supply it with an up-to-date address, plaintiff is estopped to deny the validity of the cancellation. This argument might have merit were it not for two facts—first that under the terms of the policy effective cancellation was not dependent upon actual receipt of notice of cancellation, and second that since New York learned on January 25, 1971 that plaintiff's address had changed it had ample time before the damage on April 6, 1971 to locate plaintiff and give, actual notice or to give notice in strict compliance with the policy.

"To establish an estoppel, it must appear that the party claiming the estoppel lacked knowledge and the means of knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change of position in consequence thereof." Wilson v. American Insurance Company, 209 A.2d 902, 904 (Del.Supr. 1965).

Assuming that at the time of sending of the notice of cancellation the failure of plaintiff to furnish New York with a current address misled New York in such way as to qualify under the principle of estoppel, New York could not thereafter blindly rely on a state of facts which it knew were untrue as a basis for estoppel. To qualify for estoppel, it had a duty to use reasonable diligence under the circumstances. Keene Corporation v. Hoofe, 267 A.2d 618, 624 (Del.Ch.1970). Failure to take corrective action during the two and one half months after it learned that plaintiff had changed address does not constitute due diligence to entitle New York to the benefit of estoppel.

■ New York also contends that the failure of plaintiff to notify New York of plaintiff's change of address invoked the following avoidance clause of the policy:

"The entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

For this clause to be applicable there must have been a wilful concealment or misrepresentation of a material fact concerning this insurance or the subject thereof, or the interests of the insured therein. It is not contended that plaintiff gave a false address at the time it furnished the information to New York. This clause does not impose a duty to supply specific information, such as change of address. It imposes a requirement that information which may be required shall be honestly and fully supplied. The clause has no application here.

■ New York argues that plaintiff had an implied obligation under the contract to notify New York of plaintiff's change in address. It cites no authority to support this proposition. The policy contained no such requirement, and it does not appear that a current address was necessary to the performance of the contractual obligations of either party under the policy as of the time of the purported cancellation. It was not necessary to the operation of the policy but merely to the discontinuance of the policy. There may be implied contractual obligations to facilitate performance of the contract. 17 Am.Jur.2d 653, Contracts § 256. I do not find an implied contractual obligation to facilitate the death of the contract. The latter obligation should be founded upon express terms of the contract. Moreover, the length of New York's inaction substantially weakens the effect of this contention.

This Court holds that the insurance policy was not cancelled prior to the damage on April 6, 1971 and was in effect on that date, and that plaintiff is not barred from asserting the claim for damages. There does not appear to be a dispute as to the

amount of the claim or that it is properly recoverable under the terms of the policy if the policy was in effect on the date of the damage. Accordingly, summary judgment is granted for plaintiff and denied for New York. The attorneys are requested to confer with the Court on the appropriate form of Order.