622 S.E.2d 788

**Rita Mae LOUK, Plaintiff Below, Appellant,**

v.

**Serge CORMIER, M.D., Defendant Below, Appellee.**

No. 31773.

Supreme Court of Appeals of West Virginia.

Submitted April 27, 2005.

Decided July 1, 2005.

Concurring Opinion of Chief Justice Albright July 6, 2005.

Dissenting Opinion of Justice Maynard July 11, 2005.

Concurring and Dissenting Opinion of Justice Benjamin Aug. 8, 2005.

84

Paul J. Harris, Wheeling, West Virginia, Attorney for Appellant.

Brent P. Copenhaver, Colombo & Stuhr, Morgantown, West Virginia, Attorney for Appellee.

DAVIS, Justice:

Rita Mae Louk, appellant/plaintiff below (hereinafter referred to as "Ms. Louk"), appeals from an order of the Circuit Court of Randolph County denying her motion for a new trial. A jury returned a non-unanimous verdict against Ms. Louk in her medical malpractice action against Dr. Serge Cormier, appellee/defendant below (hereinafter referred to as "Dr. Cormier"). Here, Ms. Louk contends that the circuit court erred by ruling that the non-unanimous verdict provision of W. Va.Code § 55–7B–6d (2001) (Supp. 2004) was constitutional.[1] After reviewing the briefs, listening to the arguments of the parties and considering the relevant authority, we reverse.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The sparse record in this case[2] indicates that on June 13, 2000, Dr. Cormier performed a hysterectomy and salpingo-oophorectomy[3] on Ms. Louk. The surgery occurred at Davis Memorial Hospital. Several days after Ms. Louk was released from the hospital, she became gravely ill. Consequently, on June 22, 2000, Ms. Louk returned to the hospital complaining of a fever, abdominal stress, constipation, bloating and a tender abdomen. On the day that Ms. Louk

---

1. The statute is set out in the Discussion portion of this opinion. *See* § III. C. *infra.*

2. The designated record is quite brief. The parties submitted only the pleadings, jury charge, verdict form, judgment order, post-trial motion, and order denying the post-trial motion.

3. "Salpingo-oophorectomy" is the "surgical removal of a uterine tube and ovary." Richard Sloane, *The Sloane–Dorland Medical–Legal Dictionary* 625 (1987).

returned to the hospital, exploratory surgery was performed. The exploratory surgery revealed that Ms. Louk had suffered a perforation of her cecum.[4]

On May 20, 2002, Ms. Louk filed a medical malpractice action against Dr. Cormier. The central allegation in the complaint was that Dr. Cormier perforated Ms. Louk's cecum when he performed the hysterectomy and salpingo-oophorectomy. Dr. Cormier defended the action on a theory that the cecum spontaneously ruptured.

The case proceeded to trial on December 2, 2003, before a twelve person jury. After both parties presented their case-in-chief, the trial court gave its jury charge. Among the instructions given was an instruction that informed the jury that it was not necessary to reach a unanimous verdict. The jury returned a verdict in which ten jurors found in favor of Dr. Cormier. Two jurors found in favor of Ms. Louk.

Thereafter, Ms. Louk filed a post-trial motion seeking a new trial arguing that the non-unanimous verdict instruction authorized by W. Va.Code § 55–7B–6d was unconstitutional. On December 19, 2003, the circuit court entered an order denying the motion for a new trial. Ms. Louk filed this appeal from that ruling.

## II.

### STANDARD OF REVIEW

Before this Court, Ms. Louk appeals from an order denying her motion for a new trial. We have held that "the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, Sanders v. Georgia–Pacific Corp., 159 W.Va. 621, 225 S.E.2d 218 (1976). In this proceeding, we are asked to determine specifically whether the trial court correctly found that the non-unanimous verdict provision of W. Va.Code § 55–7B–6d is constitutionally sound. This Court indicated

in Phillip Leon M. v. Greenbrier County Board of Education, 199 W.V. 400, 404, 484 S.E.2d 909, 913 (1996), that "[b]ecause interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a de novo review." In Syllabus point 1 of State ex rel. Appalachian Power Company v. Gainer, 149 W.Va. 740, 143 S.E.2d 351 (1965), we elaborated on the standard for reviewing the constitutionality of a statute as follows:

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Accord Syl. pt. 4, State ex rel. Cities of Charleston, Huntington & its Counties of Ohio & Kanawha v. West Virginia Econ. Dev. Auth., 214 W.Va. 277, 588 S.E.2d 655 (2003); Syl. pt. 1, West Virginia Trust Fund, Inc. v. Bailey, 199 W.Va. 463, 485 S.E.2d 407 (1997); Syl. pt. 1, State ex rel. Blankenship v. Richardson, 196 W.Va. 726, 474 S.E.2d 906 (1996).

With these standards in mind, we turn to the issues presented by this appeal.

## III.

### DISCUSSION

#### A. Propriety of Addressing the Constitutionality of W.Va Code § 55–7B–6d

The first issue we must address is Dr. Cormier's contention that Ms. Louk has

---

**4.** The "cecum" is "the first part of the large intestine, forming a dilated pouch into which open the ileum, the colon, and the appendix vermiformis." Sloane, The Sloane–Dorland Med-

ical–Legal Dictionary, at 128. The record fails to indicate the nature or outcome of the treatment provided for the perforated cecum.

waived the issue of the constitutionality of W. Va.Code § 55–7B–6d because she did not raise the issue until after the jury returned its verdict. This Court has held that, " '[a] party may only assign error to the giving of instructions if he objects thereto before arguments to the jury are begun stating distinctly the matter to which he objects and the grounds of his objection.' " Syl. pt. 9, *Wolfe v. Welton,* 210 W.Va. 563, 558 S.E.2d 363 (2001) (quoting Syl. pt. 1, *Roberts v. Powell,* 157 W.Va. 199, 207 S.E.2d 123 (1973)). *Accord* W. Va. R. Civ. P., 51. The record is clear. Ms. Louk did not raise an objection to the constitutionality of W. Va.Code § 55–7B–6d before the jury was instructed. However, our cases have explicitly stated that, under very narrow circumstances, an error not properly preserved at the trial court level may be considered on appeal.

In the concurring opinion of Justice Cleckley in *State v. Greene,* the following observations were made regarding this Court's authority to address an issue that was not properly preserved at the trial court level:

> [A]lthough the rule requiring all appellate issues be [properly] raised first in the circuit court is important, it is not immutable: Our cases have made clear that the failure to [properly] raise issues below is not a jurisdictional prerequisite to an appeal but, rather, is a gatekeeper provision rooted in the concept of judicial economy, fairness, expediency, respect, and practical wisdom. Requiring issues to be [properly] raised at the trial level is a juridical tool, embodying appellate respect for the circuit court's advantage and capability to adjudicate the rights of our citizens.
>
> This case, however, is not one in which, by neglecting to raise an issue in a timely manner, a litigant has deprived this Court of useful factfinding. The issue raised here, but omitted below, is purely legal in nature and lends itself to satisfactory resolution on the existing record without further development of the facts.... More importantly, the defendant's belated proffer raises an issue of constitutional magni-

tude, a factor that favors review notwithstanding a procedural default.... I believe this sensitivity is appropriately expressed by a frank recognition that, when public, as well as institutional, interests are at stake, the case for the flexible exercise of this Court's discretion is strengthened and waiver rules ought not to be applied inflexibly.

196 W.Va. 500, 505–06, 473 S.E.2d 921, 926–27 (1996) (Cleckley, J., concurring).[5] *See also State v. Aleman,* 210 Ariz. 232, 109 P.3d 571, 579 (2005) ("[W]aiver is a procedural concept that courts do not rigidly employ in mechanical fashion."); *In re Foster,* 33 Kan. App. 717, 107 P.3d 1249, 1255 (2005) ("[A]n appellate court may consider an issue for the first time on appeal in exceptional circumstances in order to serve the interests of justice or to prevent a denial of fundamental rights.").

The case of *Whitlow v. Board of Education of Kanawha County,* 190 W.Va. 223, 438 S.E.2d 15 (1993), illustrates the narrow context in which this Court may address an issue that was not properly preserved below. In *Whitlow,* the plaintiff was injured in 1987 when the bleachers at her junior high school collapsed. At the time of the accident, she was fifteen years old. The plaintiff filed a law suit in 1991. The trial court dismissed the action on the grounds that the statute of limitations for the West Virginia Governmental Tort Claims and Insurance Act, W. Va. Code § 29–12A–6 (1986), had run. The plaintiff appealed the dismissal arguing that W. Va.Code § 29–12A–6 violated the Equal Protection Clause of the state constitution. The defendant asked this Court not to address the constitutional issue because it was never raised at the trial court level. This Court acknowledged the general rule that "when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Whitlow,* 190 W.Va. at 226, 438 S.E.2d at 18 (citations omitted). Nevertheless, we declined to apply

---

5. Pursuant to Rule 51 of the West Virginia Rules of Civil Procedure, this Court "may, in the interest of justice, notice plain error in the giving [of] an instruction, whether or not it has been made the subject of objection." However, the issue raised in this appeal does not come within the scope of the plain error doctrine.

the general waiver rule for the following reasons:

> In this case, we are confronted with very limited and essentially undisputed facts. The constitutional issue raised for the first time on appeal is the controlling issue in the resolution of the case. If the statute is unconstitutional, the case should not be dismissed. Furthermore, the issue is one of substantial public interest that may recur in the future....
>
> ... Here, the defendant has thoroughly briefed the constitutional issue in response to the plaintiff's claim. We view the matter as sufficiently developed to decide the issue.

*Whitlow,* 190 W.Va. at 226–27, 438 S.E.2d at 18–19.[6] *See also Los Angeles Unified School Dist. v. State of California,* 280 Cal.Rptr. 237, 239, 229 Cal.App.3d 552, 555 (1991) ("[A] claim regarding ... [a] constitutional provision can be belatedly raised [on appeal] because it raises a purely legal question involving no disputed facts."). *Accord Barrio v. San Manuel Div. Hosp. for Magma Copper Co.,* 143 Ariz. 101, 692 P.2d 280, 283 (1984) (same); *State v. Samuels,* 273 Conn. 541, 871 A.2d 1005, 1016 (2005) (same); *Wright v. State,* 2005 WL 1026669, at *1 (Fla.Dist.Ct. App.2005) (same); *People v. Pickens,* 354 Ill.App.3d 904, 290 Ill.Dec. 776, 822 N.E.2d 58, 66 (2004) (same); *Unwired Telecom Corp. v. Parish of Calcasieu,* 903 So.2d 392, 399 (La.2005) (same); *State v. Ronning,* 2005 WL 1088435, at *5 (Minn.Ct.App.2005) (same); *Anderson v. Assimos,* 356 N.C. 415, 572 S.E.2d 101, 102 (2002) (same); *Roseborough v. Scott,* 875 P.2d 1160, 1165 (Okla.Ct. App.1994) (same); *Bassi v. Rhode Island Insurers' Insolvency Fund,* 661 A.2d 77, 79 (R.I.1995) (same); *In re D.L.,* 160 S.W.3d 155, 160 n. 1 (Tex.App.2005) (same); *In re Disability Proceeding Against Diamond-*

*stone,* 153 Wash.2d 430, 105 P.3d 1, 8 (2005) (same).[7]

■ As a result of our thorough and very logical reasoning in *Whitlow,* we now hold that a constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case.

■ Applying the above principle of law to the facts of this case, we exercise our discretion to address the constitutional issue presented even though it was not properly preserved below. The issue of the constitutionality of W. Va.Code § 55–7B–6d does not involve any disputed facts. The matter is strictly a question of law. Dr. Cormier's brief states, without any argument, that "the resolution of the constitutionality of West Virginia Code § 55–7B–6d is clearly not a 'controlling issue.'" We disagree. The verdict in this case was not unanimous. The verdict was upheld only because W. Va.Code § 55–7B–6d authorized such an outcome. In other words, but for the application of W. Va.Code § 55–7B–6d, the verdict returned would be invalid.

### B. Separation of Powers Clause and the Rule–Making Clause

Ms. Louk contends that enactment of the non-unanimous verdict provision of W. Va. Code § 55–7B–6d violates the Separation of Powers Clause contained in Article V, § 1 of the West Virginia Constitution because the Rule–Making Clause of Article VIII, § 3 grants this Court the authority to promulgate rules concerning non-unanimous jury verdicts.

The Separation of Powers Clause of Article V, § 1 provides, in relevant part, that "[t]he legislative, executive and judicial depart-

---

6. The Court went on to hold that "W. Va.Code, 29–12A–6, violates the Equal Protection Clause found in Section X of Article III of the West Virginia Constitution to the extent that it denies to minors the benefit of the statute of limitations provided in the general tolling statute, W. Va. Code, 55–2–15." *Whitlow,* 190 W.Va. at 231, 438 S.E.2d at 23.

7. Dr. Cormier's brief has cited to a few cases from other jurisdictions that have refused to ad-

dress constitutional claims that were not preserved at the trial court level. We do not disagree with the general rule applied by those authorities. However, we have chosen to follow precedent by this Court, and other courts, which holds that an appellate court may "consider constitutional questions not properly raised in the trial court, but only in exceptional circumstances." *Anderson v. Assimos,* 356 N.C. 415, 572 S.E.2d 101, 102 (2002).

ments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" W. Va. Const. art. V, § 1. It has been observed that

> [t]he Separation of Powers Clause is not self-executing. Standing alone the doctrine has no force or effect. The Separation of Powers Clause is given life by each branch of government working exclusively within its constitutional domain and not encroaching upon the legitimate powers of any other branch of government. This is the essence and longevity of the doctrine.

State ex rel. Affiliated Constr. Trades Found. v. Vieweg, 205 W.Va. 687, 702, 520 S.E.2d 854, 869 (1999) (Davis, J., concurring). It also has been noted that

> "[t]he system of "checks and balances" provided for in American state and federal constitutions and secured to each branch of government by 'Separation of Powers' clauses theoretically and practically compels courts, when called upon, to thwart any unlawful actions of one branch of government which impair the constitutional responsibilities and functions of a coequal branch."

State ex rel. Farley v. Spaulding, 203 W.Va. 275, 286–87, 507 S.E.2d 376, 387–88 (1998) (Davis, C.J., dissenting) (quoting State ex rel. Brotherton v. Blankenship, 158 W.Va. 390, 402, 214 S.E.2d 467, 477 (1975)).

The Rule–Making Clause of Article VIII, § 3 provides, in relevant part, that the Supreme "[C]ourt shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law." W. Va. Const. art. VIII, § 3. See also Syl. pt. 1, Bennett v. Warner, 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law."). As a result of the authority granted to this Court by the Rule–Making Clause, " 'a statute governing procedural matters in [civil or] criminal cases

which conflicts with a rule promulgated by the Supreme Court would be a legislative invasion of the court's rule-making powers.' " State v. Arbaugh, 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting People v. Hollis, 670 P.2d 441, 442 (Colo.Ct.App.1983)). See also Syl. pt. 5, State v. Wallace, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect."); Syl. pt. 7, in part, State v. Derr, 192 W.Va. 165, 451 S.E.2d 731 (1994) ("The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts."). A review of some of the prior decisions of this Court indicate that we have historically invalidated statutes that conflicted with rules promulgated by this Court.

The case of Laxton v. National Grange Mutual Insurance Company, 150 W.Va. 598, 148 S.E.2d 725 (1966), overruled on other grounds by Smith v. Municipal Mut. Ins. Co., 169 W.Va. 296, 289 S.E.2d 669 (1982), is one of the earliest decisions to address the issue of a statute that was in conflict with a rule promulgated by this Court. In Laxton, the plaintiff's automobile was damaged in a wreck. The plaintiff filed an action against his insurer to recover the cost to repair the vehicle. The insurer defended the action on the theory that the policy had been cancelled before the wreck occurred. The jury returned a verdict in favor of the plaintiff. The insurer appealed, and the plaintiff filed a cross-assignment of error. The relevant issue in the case involved the plaintiff's cross-assignment of error.[8]

On appeal, the plaintiff argued that the insurer had waived its defense of alleged cancellation by failing to plead the defense in conformity with W. Va.Code § 56–4–21. That statute required that, in any action on an insurance policy, certain defenses must be asserted affirmatively by a statement in writing and under oath. The Court in Laxton

---

8. This Court reversed the judgment and awarded the insurer a new trial.

acknowledged that prior to the adoption of the West Virginia Rules of Civil Procedure, the requirements of W. Va.Code § 56-4-21 had been mandatory. However, the opinion went on to invalidate the statute as a result of the Rules of Civil Procedure:

> We believe that the procedural provisions of this statute have been superseded by the West Virginia Rules of Civil Procedure which became effective July 1, 1960. The ... cases cited in behalf of the plaintiff were decided before that date. R.C.P. 1 is, in part, as follows: "These rules govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature whether cognizable as cases at law or in equity...." R.C.P. 8(c) deals with affirmative defenses, but does not provide that such defenses must be raised by a pleading under oath. R.C.P. 11 provides, that except where otherwise provided by the Rules, pleadings need not be verified or accompanied by affidavit. The Rules embrace actions such as that involved in this case. The answer to the complaint affirmatively pleaded the alleged cancellation. The answer was not required by the Rules to be under oath. The cross-assignment of error, therefore, is not well taken.

*Laxton,* 150 W.Va. at 601, 148 S.E.2d at 727.

The leading case addressing the issue of a legislative statute that conflicted with a rule promulgated by this Court is *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994). *Mayhorn* was a medical malpractice action against an emergency room physician and hospital. During the trial, the circuit court granted the defendants' motion for a directed verdict asserting that the plaintiff's expert relied on a fact not in evidence when rendering his opinion. The plaintiff filed an appeal. The defendants filed a cross-assignment of error. The relevant issue in the case involved the defendants' cross-assignment of error.[9]

In the defendants' cross-assignment of error, they alleged that the plaintiff's expert should not have been allowed to testify because he did not qualify as an expert under W. Va.Code § 55-7B-7 (1986) (Repl.Vol. 2000). This statute provided, in relevant part, that "expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: ... (e) *such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.*" [10] W. Va.Code § 55-7B-7 (emphasis added). The plaintiff argued that the statute was invalid because it was in conflict with Rule 702 of the West Virginia Rules of Evidence. Rule 702 imposed the following requirements for a person to qualify as an expert:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education* may testify thereto in the form of an opinion or otherwise.

(Emphasis added).

The opinion in *Mayhorn* acknowledged that the Court had previously examined the validity of W. Va.Code § 55-7B-7 in *Gilman v. Choi,* 185 W.Va. 177, 406 S.E.2d 200 (1990). However, the issue in *Gilman* had been whether or not the Legislature could enact a statute which addressed the competency of an expert. *Gilman* found that the Legislature could craft competency requirements for experts because Rule 601 of the West Virginia Rules of Evidence specifically stated that "[e]very person is competent to be a witness *except as otherwise provided for by statute* or these rules." (Emphasis added). In dicta, *Gilman* suggested that Rule 601 could be used by the Legislature to impose qualifications on experts. The *Mayhorn* opinion rejected *Gilman's* broad application of Rule 601 as follows:

> There is a difference between the competency of a witness, which is governed by W. Va. R. Evid. 601, and the qualifications of an expert, which is governed by W. Va. R. Evid. 702. Furthermore, W. Va. R.

---

9. We reversed the trial's court ruling regarding the admissibility of testimony by the plaintiff's expert.

10. The statute was amended in 2003, and the italicized language was removed. *See* W. Va. Code § 55-7B-7 (2003) (Supp.2004).

Evid. 601 should not be used to allow the legislature to outline when an expert is qualified. Instead, the applicable provision is W. Va. R. Evid. 702. . . .

W. Va. R. Evid. 702 does not provide that the legislature may outline when a witness should be found to be qualified as an expert. This Court has complete authority to determine an expert's qualifications pursuant to its constitutional rule-making authority. . . .

Accordingly, we hold that Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi*, 185 W.Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled.

*Mayhorn*, 193 W.Va. at 49, 454 S.E.2d at 94 (internal citations omitted).[11] *See also West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999) (holding that the requirement of W. Va.Code § 37-14-3(a) that an expert real estate appraiser had to be licensed and certified was invalid and that Rule 702 controlled the qualifications of such an expert); *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) (same).

Recently, in *Games–Neely ex rel. West Virginia State Police v. Real Property*, 211 W.Va. 236, 565 S.E.2d 358 (2002), we were again asked to determine the validity of a legislative statute that conflicted with a rule of this Court. The decision in *Games–Neely* involved the State's seizure of the home of an elderly woman. The home had been used by others to engage in drug trafficking. The State filed a petition to seize the home under the West Virginia Contraband Forfeiture Act (the "Forfeiture Act"), W. Va.Code §§ 60A-7–701 *et seq.* The home owner failed to file an answer within the timeframe set by the Forfeiture Act. Consequently, a default judgment was rendered. The home owner subsequently filed a motion to set aside the default

judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure. The trial court denied relief. In the appeal, one of the issues the Court addressed was whether or not a provision in the Forfeiture Act precluded the circuit court from entertaining a Rule 60(b) motion. The provision in question, W. Va.Code § 60A-7–705(d) (1988) (Repl.Vol. 2000), provided as follows:

If no answer or claim is filed within thirty days of the date of service of the petition pursuant to subsection (b) of this section, or within thirty days of the first publication pursuant to subsection (b) of this section, the court shall enter an order forfeiting the seized property to the state.

The Court in *Games–Neely* properly concluded that W. Va.Code § 60A-7–705(d) could not prevent a trial court from hearing a Rule 60(b) motion:

Despite the mandatory language of Section 705(d), the Appellant maintains that the circuit court still has discretion to set aside the default judgment pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. . . .

. . . .

. . . [T]here is no question that rules promulgated under authority of the state constitution . . . prevail whenever there is a conflict, real or perceived, between such rules and legislative provisions involving court procedures. . . .

. . . .

Upon consideration of these established principles concerning conflicts between judicially-enacted rules of procedure and legislative acts that contain procedural directives, we conclude that Rule 60(b) has the force and effect of law; applies to forfeiture proceedings under the Forfeiture Act; and supersedes West Virginia Code § 60A-7–705(d) to the extent that Section 705(d) can be read to deprive a circuit court of its grant of discretion to review a default judgment order. Accordingly, we hold that a circuit court has discretion under Rule 60(b) of the West

---

**11.** The decision in *Mayhorn* went on to find that the trial court did not err in finding the plaintiff's

expert qualified as an expert under Rule 701.

Virginia Rules of Civil Procedure to set aside a judgment by default entered pursuant to West Virginia Code § 60A–7–705(d) of the Forfeiture Act for failure to file an answer or claim within thirty days of the date of service of a petition of forfeiture or within thirty days [sic] its first publication. *Games–Neely,* 211 W.Va. at 244–45, 565 S.E.2d at 366–67 (internal citations omitted).[12]

The decisions in *Laxton, Mayhorn* and *Games–Neely* are illustrative of this Court's longstanding position that "the legislative branch of government cannot abridge the rule-making power of this Court." *In re Mann,* 151 W.Va. 644, 651, 154 S.E.2d 860, 864 (1967), *overruled on other grounds by Committee on Legal Ethics of West Virginia State Bar v. Boettner,* 183 W.Va. 136, 394 S.E.2d 735 (1990). *See also* Syl. pt. 2, *Williams v. Cummings,* 191 W.Va. 370, 445 S.E.2d 757 (1994) ("West Virginia Code § 56–1–1(a)(7) provides that venue may be obtained in an adjoining county '[i]f a judge of a circuit be interested in a case which, but for such interest, would be proper for the jurisdiction of his court....' This statute refers to a situation under which a judge might be disqualified, and therefore it is in conflict with and superseded by Trial Court Rule XVII, which addresses the disqualification and temporary assignment of judges."); *State v. Davis,* 178 W.Va. 87, 90, 357 S.E.2d 769, 772 (1987) (holding that W. Va. R.Crim. P. 7(c)(1) supersedes the provisions of W. Va.Code § 62–9–1 (1931) to the extent that the statute requires the indorsement of the grand jury foreman and attestation of the prosecutor on the reverse side of the indictment), *overruled on other grounds by State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994); *Hechler v. Casey,* 175 W.Va. 434, 449 n. 14, 333 S.E.2d 799, 815 n.

14 (1985) ("W. Va.Code, 53–1–8 [1933], applicable to both mandamus and prohibition proceedings, authorizes an award of either of these types of writs with or without costs as the court or judge may determine. W. Va. R.App. P. 23(b), however, .;. precludes an award of costs to the State in this Court. This Court's procedural rule, to the extent it conflicts with the procedural statute, supersedes the statute."); Syl., *State ex rel. Quelch v. Daugherty,* 172 W.Va. 422, 306 S.E.2d 233 (1983) ("The constitutional separation of powers, W. Va. Const. art. V, § 1, prohibits the legislature from regulating admission to practice and discipline of lawyers in contravention of rules of this Court."); Syl. pt. 2, *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977) ("The administrative rule promulgated by the Supreme Court of Appeals of West Virginia, setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge, operates to supersede the existing statutory provisions found in W. Va.Code, 51–2–9 and –10 and W. Va.Code, 56–9–2, insofar as such provisions relate to the selection of special judges and to the assignment of a case to another circuit judge when a particular circuit judge is disqualified."); *Montgomery v. Montgomery,* 147 W.Va. 449, 128 S.E.2d 480 (1962) (holding that the bills of exception requirement for an appeal under W. Va.Code § 56–6–35 was abolished by Rule 80).

### C. Conflict between W. Va.Code § 55–7B–6d and W. Va. R. Civ. P. Rule 48

■ Ms. Louk next contends that the non-unanimous verdict provision contained in W. Va.Code § 55–7B–6d is a procedural rule that is in conflict with Rule 48 of the West Virginia Rules of Civil Procedure, and is therefore invalid.[13]

**12.** The opinion reversed the trial court's denial of the home owner's Rule 60(b) motion.

**13.** It has been pointed out that " '[i]n order to ascertain whether there is an infringement on this Court's rulemaking authority, we must first determine whether the statute is substantive or procedural. If we find that the statute is "substantive and that it operates in an area of legitimate legislative concern," then we are precluded from finding it unconstitutional.' " *State v. Ar-*

*baugh,* 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *Caple v. Tuttle's Design–Build, Inc.,* 753 So.2d 49, 53 (Fla. 2000)). Furthermore, it has been recognized that

[s]ubstantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical

We begin our analysis by pointing out that in 2001 the Legislature amended the Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55–7B–1, *et seq.*, by adding W. Va. Code § 55–7B–6d. The purpose of the MPLA, as set out in W. Va.Code § 55–7B–1 (1986) (Repl.Vol.2000), provides in part as follows:

> The Legislature hereby finds and declares that the citizens of this state are entitled to the best medical care and facilities available and that health care providers offer an essential and basic service which requires that the public policy of this state encourage and facilitate the provision of such service to our citizens:
>
> That as in every human endeavor the possibility of injury or death from negligent conduct commands that protection of the public served by health care providers be recognized as an important state interest;
>
> That our system of litigation is an essential component of this state's interest in providing adequate and reasonable compensation to those persons who suffer from injury or death as a result of professional negligence;
>
> . . . .
>
> Therefore, the purpose of this enactment is to provide for a comprehensive resolution of the matters and factors which the Legislature finds must be addressed to accomplish the goals set forth above. In so doing, the Legislature has determined that reforms in the common law and statutory rights of our citizens to compensation for injury and death ... must be enacted together as necessary and mutual ingredi-

ents of the appropriate legislative response.[14]

This Court is quite sensitive to the need for reform in medical malpractice litigation. Furthermore, we wholeheartedly applaud the efforts of the Legislature in attempting to find a balance between the rights of injured persons and the desire to maintain a stable health care system in our State. However, "[i]t is the constitutional obligation of the judiciary to protect its own proper constitutional authority by upholding the independence of the judiciary." Syl. pt. 4, *State ex rel. Lambert v. Stephens,* 200 W.Va. 802, 490 S.E.2d 891 (1997). "The efficient administration of the judicial system is essential to our duty to implement justice in West Virginia; and, therefore, we must be wary of any legislation that undercuts the power of the judiciary to meet its constitutional obligations." *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 25, 454 S.E.2d 65, 70 (1994). "[T]he role of this Court is vital to the preservation of the constitutional separation of powers of government where that separation, delicate under normal conditions, is jeopardized by the usurpatory actions of the executive or legislative branches of government." *State ex rel. Steele v. Kopp,* 172 W.Va. 329, 337, 305 S.E.2d 285, 293 (1983). Without question, "this Court has settled on a policy of strong adherence to the several constitutional provisions relating to the separation of powers, as conferred on the three departments of the State government, and particularly as to the jurisdiction of courts, and the powers they may assume or decline to exercise." *Sims v. Fisher,* 125 W.Va. 512, 524, 25 S.E.2d 216, 222 (1943). Therefore, it is our constitutional duty to make certain that W. Va.Code § 55–7B–6d has been enacted in a

---

operations of the courts by which substantive law, rights, and remedies are effectuated.
*Arbaugh,* 215 W.Va. at 139, 595 S.E.2d at 296 (Davis, J., dissenting) (quoting *State v. Templeton,* 148 Wash.2d 193, 213, 59 P.3d 632, 642 (2002)). In the instant case, we have no difficulty in finding the provisions of W. Va.Code § 55–7B–6d are procedural in nature and, therefore, fall within our sphere of authority pursuant to the Rule-Making Clause. Finally, we also note that,
> [i]f a statute purports to regulate a matter that is within the exclusive control of the judiciary under a specific grant of constitutional authority, then it makes no difference whether the right created by the statute is characterized

as substantive or procedural. In neither case could the statute prevail over conflicting provisions of a court rule implementing the constitutional authority in question.
*Crow v. State,* 866 So.2d 1257, 1260 (Fla.Dist. App.Ct.2004).

**14.** This version of the Legislative Findings and Declaration of Purpose was in existence when Ms. Louk filed her complaint. The Legislature amended the Legislative Findings and Declaration of Purpose in 2003. *See* W. Va.Code § 55–7B–1 (2003) (Supp.2004).

manner that does not encroach upon the constitutional powers of this Court. *See* Syl. pt. 3, *State ex rel. Weirton Med. Ctr. v. Mazzone,* 214 W.Va. 146, 587 S.E.2d 122 (2002) ("The provisions of the Medical Professional Liability Act, W. Va.Code §§ 55–7B–1 to –11 (1986), govern actions falling within its parameters, subject to this Court's power to promulgate rules for all cases and proceedings, including rules of practice and procedure, pursuant to Article VIII, Section 3 of the West Virginia Constitution.").

The relevant language in W. Va.Code § 55–7B–6d states that, in medical malpractice litigation,

> The judge shall instruct the jury that they should endeavor to reach a unanimous verdict but, if they cannot reach a unanimous verdict, they may return a majority verdict of nine of the twelve members of the jury. The judge *shall* accept and record any verdict reached by nine members of the jury. The verdict shall bear the signatures of all jurors who have concurred in the verdict. The verdict shall be announced in open court, either by the jury foreperson or by any of the jurors concurring in the verdict. After a verdict has been returned and before the jury has been discharged, the jury shall be polled at the request of any party or upon the court's own motion. The poll shall be conducted by the clerk of the court asking each juror individually whether the verdict announced is such juror's verdict. If, upon the poll, a majority of nine members of the jury has not concurred in the verdict, the jury may be directed to retire for further deliberations or the jury may be discharged.

(Emphasis added).[15] W. Va.Code § 55–7B–6d clearly states that trial courts shall instruct juries that they may return a non-unanimous verdict. The use of the word "shall" by the statute means that trial courts have no discretion in the matter. In fact, they must give a non-unanimous verdict instruction to the jury. *See State v. Allen,* 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999)

("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary."); Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). Ms. Louk contends that the mandatory non-unanimous verdict instruction in W. Va.Code § 55–7B–6d is in conflict with Rule 48. We agree.

Pursuant to the Rule–Making Clause of our constitution, this Court has addressed the issue of a non-unanimous jury verdict in Rule 48. Rule 48 clearly states that "[t]he parties may stipulate ... that a verdict ... of a stated majority of the jurors shall be taken as the verdict ... of the jury." There is simply no ambiguity in Rule 48. Rule 48 provides only one method by which a jury may return a non-unanimous verdict, *i.e.,* through a stipulation by the parties. *See* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 48, at 844 (2002) ("The parties may ... stipulate that a verdict ... of a ... majority of the jurors will be taken as the verdict ... of the jury."). The non-unanimous verdict provision in W. Va.Code § 55–7B–6d has stripped litigants of a right granted to them by this Court under our constitutional authority. The Legislature cannot remove that which was not in its power to give. This Court has made clear that "[t]he legislative, executive, and judicial powers ... are each in its own sphere of duty, independent of and exclusive of the other; so that, whenever a subject is committed to the discretion of the [judicial], legislative or executive department, the lawful exercise of that discretion cannot be controlled by the [others]." *Danielley v. City of Princeton,* 113 W.Va. 252, 255, 167 S.E. 620, 622 (1933). Promulgation of rules governing litigation in the courts of this State rests exclusively with this Court.

---

**15.** The foregoing quotation is incomplete only in that it omits the introductory sentence of W. Va.Code § 55–7B–6d. That introductory sentence states: "Notwithstanding any other provi-
sion of this code, the jury in any trial of an action for medical professional liability shall consist of twelve members." This provision of the statute is addressed in Part "D" of this opinion.

Dr. Cormier contends that W. Va.Code § 55–7B–6d is not in conflict with Rule 48 because the rule does not explicitly require a unanimous verdict. This argument misses the critical point of the analysis. The issue under analysis is not whether Rule 48 implicitly or explicitly requires a unanimous verdict. Our analysis addresses the more narrow issue of whether this Court has, through Rule 48, determined how a non-unanimous verdict may be returned. We have. Rule 48 places the issue of accepting a non-unanimous verdict squarely within the discretion of the parties. In contrast, W. Va.Code § 55–7B–6d squarely imposes a non-discretionary duty upon the trial court to accept a non-unanimous verdict. Consequently, it takes no great intellectual strain to conclude that Rule 48 and W. Va.Code § 55–7B–6d are in conflict. We have previously indicated that a rule promulgated by this Court "has the effect of a statute in matters of procedure and supersedes any procedural statute which conflicts with the rule." *State ex rel. Wilson v. County Court of Barbour County*, 145 W.Va. 435, 442, 114 S.E.2d 904, 909 (1960). In this regard, we have held that "[l]egislative enactments which are not compatible with those prescribed by the judiciary or with its goals are unconstitutional violations of the separation of powers." *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 424, 306 S.E.2d 233, 235 (1983).

■ Accordingly, we hold that the provisions contained in W. Va.Code § 55–7B–6d (2001) (Supp.2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West

Virginia Constitution. Consequently, W. Va. Code § 55–7B–6d, in its entirety, is unconstitutional and unenforceable.[16]

### D. The MPLA's Severability Statute

Because of an amendment to the MPLA's Severability statute in 2001,[17] our determination that the non-unanimous verdict provision in W. Va.Code § 55–7B–6d is invalid impacts other provisions of the MPLA,[18] as well as another statute. The MPLA's Severability statute, W. Va.Code § 55–7B–11 (2001) (Supp.2004), reads as follows:

(a) If any provision of this article as enacted during the first extraordinary session of the Legislature, 1986, in House Bill 149, or as enacted during the regular session of the Legislature, 1986, in Senate Bill 714, or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of this article, and to this end, the provisions of this article are declared to be severable.

(b) *If any provision of the amendments to section five of this article, any provision of new section six-d of this article or any provision of the amendments to section eleven, article six, chapter fifty-six of this code as provided in House Bill 601, enacted during the sixth extraordinary session of the Legislature, two thousand one, is held invalid, or the application thereof to any person is held invalid, then, notwithstanding any other provision of law, every other provision of said House Bill 601 shall be deemed invalid and of no further force and effect.*

(c) If any provision of the amendments to sections six or ten of this article or any provision of new sections six-a, six-b or six-c of this article as provided in House Bill

---

**16.** The invalidity of the remaining provision in W. Va.Code § 55–7B–6d, requiring twelve jurors in medical malpractice cases, is discussed in the next section of this opinion.

**17.** "It has come to be common legislative drafting practice to include in each bill a separability clause (sometimes called a severability clause or saving clause) to the effect that if any part of the act be found invalid, the remainder of the act shall nevertheless be upheld. Such clauses must be considered by the courts in deciding the sepa-

rability of an enactment. The separability clause is a comparatively modern legislative device, the courts having developed the principle and practice of holding statutes separable long before the innovation of separability clauses." Norman J. Singer, *Statutes and Statutory Construction* § 44:8, at 585 (2001).

**18.** The validity of W.Va.Code § 56–6–11 is also affected by our decision invalidating the non-unanimous verdict language of W. Va.Code § 55–7B–6d.

601, enacted during the sixth extraordinary session of the Legislature, two thousand one, is held invalid, such invalidity shall not affect other provisions or applications of this article, and to this end, such provisions are deemed severable.

(Emphasis added).

A fair reading of the Severability statute indicates that it is a hybrid, *i.e.*, it contains both *severability* provisions and a *non-severability* provision. It is the non-severability provision, W. Va.Code § 55–7B–11(b), that is relevant to our decision in this case. Under the non-severability provision, the Legislature has determined that, if this Court invalidates a provision to the 2001 amendments to W. Va.Code § 55–7B–5, W. Va.Code § 56–6–11, or the newly created W. Va.Code § 55–7B–6d, then all of said provisions are invalid. In other words, the non-severability provision has presumptively invalidated the remaining twelve juror provision in W. Va.Code § 55–7B–6d, and the 2001 amendments to W. Va.Code § 55–7B–5 and W. Va.Code § 56–6–11, as a result of our determination that the non-unanimous verdict provision in W. Va. Code § 55–7B–6d is unconstitutional. The issue of the deference to be accorded a non-severability provision appears to be one of first impression for this Court.

It has been observed that "[a] non-severability clause is almost unheard of and constitutes a legislative finding that every section is so important to the single subject that no part of the act can be removed without destruction of the legislative purpose." *Farrior v. Sodexho, U.S.A.*, 953 F.Supp. 1301, 1302

(N.D.Ala.1997).[19]  Our research indicates that only a few courts have addressed the issue of non-severability provisions. A majority of those courts have enforced non-severability provisions without comment. *See Texas Pharmacy Ass'n v. Prudential Ins. Co. of America*, 105 F.3d 1035, 1039 (5th Cir.1997) (finding portions of law unconstitutional and invalidating remainder because of non-severability statute); *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 988 (9th Cir.1991) (same); *Wisconsin Realtors Ass'n v. Ponto*, 233 F.Supp.2d 1078, 1093 (W.D.Wis.2002) (same); *Scinto v. Kollman*, 667 F.Supp. 1106, 1109 (D.Md.1987) (same); *Schafer v. Vest*, 680 P.2d 1169, 1170 (Alaska 1984) (same); *City of Colorado Springs v. State*, 626 P.2d 1122, 1129 (Colo.1980) (same); *Sarner v. Union Tp., Union County*, 55 N.J.Super. 523, 151 A.2d 208, 220 (1959) (same); *Texas Vending Comm'n v. Headquarters Corp.*, 505 S.W.2d 402, 404 (Tex.Civ. App.1974) (same); *State v. Mendoza*, 748 P.2d 181, 186 (Utah 1987) (same).[20]

A few courts, however, have commented on the degree of deference to be accorded to non-severability provisions. These courts have held that "a non-severability clause cannot ultimately bind a court, it establishes [only] a presumption of non-severability." *Biszko v. RIHT Fin. Corp.*, 758 F.2d 769, 773 (1st Cir.1985). That is, "[d]espite the unambiguous command of ... [non]severability clauses, ... they create only a rebuttable presumption that guides—but does not control—a reviewing court's severability determination." Shumsky, *Severability, Insevera-*

**19.** "[C]ontroversial legislation sometimes includes [a non-]severability clause, a clause declaring that, if any one provision of the statute is held invalid, the remainder of the statute shall not have effect." Mark L. Movsesian, *Severability in Statutes and Contracts*, 30 Ga. L.Rev. 41, 77 (1995). Further, it has been suggested that legislatures include a non-severability provision in a statute "in an effort to prevent the courts from sustaining a piece of controversial legislation in the event that they invalidate one central provision." Lars Noah, *The Executive Line Item Veto and the Judicial Power to Sever: What's The Difference?*, 56 Wash. & Lee L.Rev. 235, 237–38 (1999). *See also* Michael D. Shumsky, *Severability, Inseverability, and the Rule of Law*, 41 Harv. J. on Legis. 227, 267–68 (2004) ("When [a legislature] includes [a non-]severability clause in constitutionally questionable legislation, it does so in order to insulate a key legislative deal from judicial interference. Such clauses are iron-clad guarantees—clear statements by [the legislature] that it would not have enacted one part of a statute without the others. Legislation containing [a non-]severability clause can thus be conceived of as a contract among competing political interests containing a structural enforcement mechanism designed to alleviate the concerns of those legislators who were willing to vote for ... a particular statutory scheme only if credibly assured that certain limiting provisions would be secure in the enacted legislation.").

**20.** *But see Legislative Research Comm'n By and Through Prather v. Brown*, 664 S.W.2d 907, 920 (Ky.1984) (invalidating non-severability statute).

*bility,* 41 Harv. J. on Legis. at 230. *See also Stiens v. Fire & Police Pension Ass'n,* 684 P.2d 180, 184 (Colo.1984) (holding that the legislature intended the benefit provisions of a pension Act to be severable from the Act's unconstitutional funding provisions, even though the Act had a non-severability provision); *Pennsylvania Fed'n of Teachers v. School Dist. of Philadelphia,* 506 Pa. 196, 484 A.2d 751, 754 (1984) (holding Act unconstitutional for persons who were members of retirement system at the time of the enactment, but finding Act constitutional as applied to those who became members of the retirement system subsequent to the effective date of the Act, even though the Act had a non-severability provision); Noah, *The Executive Line Item Veto,* 56 Wash. & Lee L.Rev. at 238 (observing that courts "occasionally sever invalidated provisions even in the face of [non]severability clauses").

We have discerned from courts and commentators that statutory construction principles that apply to "severability" provisions are equally applicable to "non-severability" provisions. *See* Richard H. Fallon, Jr., *As–Applied and Facial Challenges and Third-party Standing,* 113 Harv. L.Rev. 1321, 1349 (2000) ("[G]eneral separability principles apply in all contexts to determine whether particular statutes are nonseverable[.]"); Israel E. Friedman, *Inseverability Clauses in Statutes,* 64 U. Chi. L.Rev. 903–04 (1997) ("Despite the explicit statutory language in severability and [non-]severability clauses, courts all but ignore the clauses and apply their own tests and presumptions to determine severability. These tests generally begin with a presumption that all statutes are either severable or inseverable.... Courts will also consider whether the statute can reasonably function as an autonomous whole without the invalid provision."). Consequently, we now hold that a non-severability provision contained in a legislative enactment is construed as merely a presumption that the Legislature intended the entire enactment to be invalid if one of the statutes in the legislation is found unconstitutional. When a non-severability provision is appended to a legislative enactment and this Court invalidates a statute contained in the enactment, we will apply severability principles of statutory construction to determine whether the non-severability provision will be given full force and effect.

**1. Severability principles of statutory construction.** Under this Court's severability principles of statutory construction we do not defer, as a matter of course, to severability provisions contained in statutes. Instead, we engage in an independent analysis to "determine legislative intent and the effect of the severability section of the statute." *In re Dostert,* 174 W.Va. 258, 272, 324 S.E.2d 402, 416 (1984), *overruled on other grounds by Harshbarger v. Gainer,* 184 W.Va. 656, 403 S.E.2d 399 (1991). *See also State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953) (invalidating entire statute even though the statute contained a severability provision); *Lingamfelter v. Brown,* 132 W.Va. 566, 52 S.E.2d 687 (1949) (same); *Hodges v. Public Serv. Comm'n,* 110 W.Va. 649, 159 S.E. 834 (1931) (same). The reason for this procedure is that a severability provision "provides a rule of construction which may aid in determining legislative intent, 'but it is an aid merely; not an inexorable command.'" Singer, *Statutes* § 44:8, at 585–86 (quoting *Dorchy v. State of Kansas,* 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924)). *See also Hodges v. Public Serv. Comm'n,* 110 W.Va. 649, 656, 159 S.E. 834, 837 (1931) ("[A severability] declaration is not an inexorable command, but is merely an aid in determining the legislative intent. The fact that a workable act remains, after eliminating the invalid provisions, is not decisive of whether the provisions are separable. There are other considerations." (internal quotation marks and citation omitted).

This Court has adopted the following statutory construction principle that is applied in determining the issue of severability:

A statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that some may stand and the others will fall; and if, when the unconstitutional portion of the statute is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in

all other respects is valid, such remaining portion will be upheld and sustained.

Syl. pt. 6, *State v. Heston*, 137 W.Va. 375, 71 S.E.2d 481 (1952). *Accord* Syl. pt. 3, *Frantz v. Palmer*, 211 W.Va. 188, 564 S.E.2d 398 (2001). *See also State v. Flinn*, 158 W.Va. 111, 130, 208 S.E.2d 538, 549 (1974) ("[A] statute may be constitutional in one part and unconstitutional in another."); *State ex rel. State Bldg. Comm'n v. Bailey*, 151 W.Va. 79, 93, 150 S.E.2d 449, 457 (1966) ("The principle is well settled by many decisions of this Court that a statute . . . may contain both constitutional and unconstitutional provisions which in substance are distinct and separable so that some may stand though others must fall."). The most critical aspect of severability analysis involves the degree of dependency of statutes. Thus, "[w]here the valid and the invalid provisions of a statute are so connected and interdependent in subject matter, meaning, or purpose as to preclude the belief, presumption or conclusion that the Legislature would have passed the one without the other, the whole statute will be declared invalid." Syl. pt. 9, *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964).

The foregoing severability statutory construction principles will be applied to determine whether the remaining twelve juror provision in W.Va.Code § 55–7B–6d and the 2001 amendments to W. Va.Code § 56–6–11 and W. Va.Code § 55–7B–5 must be invalidated as inseverable from W.Va.Code § 55–7B–6d.

■■■■ **2. The twelve juror provision of W. Va.Code § 55–7B–6d.** The remaining provision in W. Va.Code § 55–7B–6d directs that "the jury in any trial of an action for medical professional liability shall consist of twelve members." As will be shown, this provision is invalid because it is in conflict with a specific rule promulgated by this Court and because it is not severable from the unconstitutional non-unanimous jury verdict provision.

The issue of the number of jurors in a civil action is addressed in Rule 47(b) of the West Virginia Rules of Civil Procedure. Rule 47(b) states, in relevant part, that "[u]nless the court directs that a jury shall consist of a greater number, a jury shall consist of six persons."[21] Under W. Va.Code § 55–7B–6d, it is mandatory that a trial court seat twelve jurors in a medical malpractice action. However, under Rule 47(b), a jury is limited to six members unless, in the exercise of the trial court's discretion, a greater number is imposed.[22] Clearly, the twelve juror requirement of W. Va.Code § 55–7B–6d is in conflict with Rule 47(b) and is therefore unconstitutional and invalid for that reason alone.

Additionally, the twelve juror requirement is dependent upon and intertwined with the unconstitutional non-unanimous jury verdict provision of W. Va.Code § 55–7B–6d. In order for the non-unanimous jury verdict provision to take effect, twelve jurors must be chosen so that a minimum of nine jurors may render a verdict. Consequently, the twelve juror provision is invalid because it is not severable from the unconstitutional non-unanimous jury verdict provision of W. Va. Code § 55–7B–6d.

■■■■ **3. Six Member Jury Exemption in Amendment to W. Va.Code § 56–6–11.** The 2001 amendment to W. Va.Code § 56–6–11 added subsection (c), which provides:

The provisions of this section providing for a six member jury trial do not apply to

---

21. Rule 47(b) was amended in 1998 to add the requirement that a jury consist of six members. Prior to that time, the only provision in the rules mentioning the number of jurors was Rule 48. Pre–1998, Rule 48 stated that "[t]he parties may stipulate that the jury shall consist of any number less than twelve[.]" It should also be noted that in 1985 the Legislature amended W. Va.Code § 56–6–11 to provide that "in any civil trial a jury shall consist of six members[.]" The apparent conflict between pre–1998 Rule 48 and W. Va.Code § 56–6–11 was a matter that this Court was never called upon to reconcile.

22. One exception exists. Pursuant to Rule 71A, of the West Virginia Rules of Civil Procedure, twelve jurors are required in eminent domain proceedings. It has been noted that "Rule 71A articulates the constitutional right to a jury of twelve persons in an eminent domain proceeding." Cleckley, Davis, & Palmer, *Litigation Handbook* § 71A(b), at 1055. *See also* W. Va. Const. art. III, § 9 (requiring 12 jurors in eminent domain proceedings).

any proceeding had pursuant to article seven-b, chapter fifty-five of this code, the provisions of which apply to all cases involving a medical professional liability action.

Clearly, W. Va.Code § 56–6–11(c)'s exemption of a six person jury in medical malpractice cases is dependent upon the twelve person provision in W. Va.Code § 55–7B–6d, which we have invalidated. Consequently, we find the 2001 amendment to W. Va.Code § 56–6–11(c) is inseverable from W. Va.Code § 55–7B–6d and is therefore invalid.

■ **4. Proscription of Bad Faith Claims Against Medical Malpractice Insurers in Amendment to W. Va.Code § 55–7B–5.** The 2001 amendment to W. Va.Code § 55–7B–5 added subsections (b) and (c), which provide:

(b) Notwithstanding any other provision of law, absent privity of contract, no plaintiff who files a medical professional liability action against a health care provider may file an independent cause of action against any insurer of the health care provider alleging the insurer has violated the provisions of subdivision (9), section four, article eleven, chapter thirty-three of this code. Insofar as the provisions of section three, article eleven, chapter thirty-three of this code prohibit the conduct defined in subdivision (9), section four, article eleven, chapter thirty-three of this code, no plaintiff who files a medical professional liability action against a health care provider may file an independent cause of action against any insurer of the health care provider alleging the insurer has violated the provisions of said section three.

(c) No health care provider may file a cause of action against his or her insurer alleging the insurer has violated the provisions of subdivision (9), section four, article eleven, chapter thirty-three of this code until the jury has rendered a verdict in the underlying medical professional liability action or the case has otherwise been dismissed, resolved or disposed of.

The issues addressed in W. Va.Code §§ 55–7B–5(b) and (c) pertain to the ability of a bad faith claim to be asserted against an insurer of a health care provider. Whether a litigant may or may not be able to file a bad faith claim against a health care insurer is not dependent in any way upon whether a verdict may be non-unanimous. That is, W. Va. Code §§ 55–7B–5(b) and (c) are independent of W. Va.Code § 55–7B–6d. *See State v. Edwards,* 95 W.Va. 599, 602, 122 S.E. 272, 273 (1924) ("The rule seems to be that where a part of an act is unconstitutional, that fact does not authorize the courts to declare the other provisions of the act void, unless they are so connected in subject matter, depending on each other, or otherwise so connected in meaning, that it cannot be presumed that the legislature would have enacted the one without the other.").

Moreover, W. Va.Code §§ 55–7B–5(b) and (c) address matters pertaining to substantive law and do not encroach upon on our authority under the Rule–Making Clause. *See Arbaugh,* 215 W.Va. at 138, 595 S.E.2d at 295 (Davis, J., dissenting) (" '[T]he separation of powers doctrine precludes the legislature from stepping into the judiciary's exclusive domain of prescribing the rules of judicial practice and procedure and similarly precludes the judiciary from overturning or contradicting a constitutional legislative declaration of substantive law.' " (quoting *In re Daniel H.,* 133 N.M. 630, 634, 68 P.3d 176, 180 (N.M.Ct.App.2003))). Consequently, W. Va.Code §§ 55–7B–5(b) and (c) are severable from W. Va.Code § 55–7B–6d and are, therefore, not invalidated by our decision to strike down the non-unanimous jury verdict provision of W. Va.Code § 55–7B–6d.

## IV.

## CONCLUSION

In this proceeding Ms. Louk sought a new trial on the grounds that the non-unanimous verdict instruction authorized by and given under W. Va.Code § 55–7B–6d was unconstitutional. The trial court denied the motion for a new trial. In this opinion we have determined that W. Va.Code § 55–7B–6d (2001) (Supp.2004) is unconstitutional and unenforceable in its entirety. Consequently, we must reverse the order denying a new

trial and remand this case for a new trial consistent with this opinion.

Reversed and Remanded.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

Chief Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

Justice BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

MAYNARD, Justice, dissenting:

(Filed July 11, 2005)

A court should exercise the greatest caution and restraint when deciding its own power. I wish the majority had done so here. By ruling that this Court, simply by its own judge-made rules, can strike down a statute passed by the entire legislature is sobering indeed! This ruling not only invalidates important provisions of the medical malpractice reform package but also serves as a warning that this Court has the absolute power to declare null and void any part or the entire reform package. The mechanism for grinding a statute out of existence is for the Court simply to declare that the statute conflicts with an existing rule of this Court or to make a new rule which conflicts with the statute. In either case, the statute becomes unconstitutional.

One of the reforms struck down by this decision is a provision which allows non-unanimous verdicts in medical malpractice cases. Thirty-four other states already allow non-unanimous jury verdicts in civil trials.[1] If all but 16 states permit non-unanimous verdicts in some form, why is it so offensive in West Virginia? If it is true that this Court's rule conflicts with the statute, why not change our rule to comport with the overwhelming national trend and the will of the people expressed through an act of the Legislature.

In an effort to respond to a perceived crisis in the availability of medical care and the cost of medical malpractice insurance, the Legislature passed the statute at issue. The majority now overrules the statute, which is clear and unambiguous, and which was properly enacted by the Legislature and signed into law by the Governor. I heartily dissent to such disregard for the constitutional prerogatives of the Legislature and the Governor—separate and coequal branches of State government. I believe that such drastic steps are unnecessary.

The majority, in invalidating W.Va.Code § 55–7B–6d(2001), creates a conflict where one simply does not exist. Specifically, the majority's decision hinges upon its finding that Rule of Civil Procedure 48 and W.Va. Code § 55–7B–6d are in conflict. Not so. These provisions are *not* in conflict. Rule 48 provides *one* exception to the general understanding that verdicts should be unanimous. The rule itself nowhere purports to be the *only* way in which a non-unanimous verdict may be returned. West Virginia Code § 55–7B–6d provides a second exception to the general rule that verdicts are to be unanimous. These provisions are not in conflict; rather, they are cumulative. In other words, they clearly provide two ways in which a non-unanimous verdict may be returned.

This is illustrated by comparing the language of West Virginia Rule of Civil Procedure 48 with its federal counterpart. According to our State rule,

> The parties may stipulate that the jury shall consist of any number fewer than six or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury.

In contrast, Federal Rule of Civil Procedure 48 provides:

> The court shall seat a jury of not fewer than six and not more than twelve members and all jurors shall participate in the verdict unless excused from service by the court pursuant to Rule 47(c). Unless the parties otherwise stipulate, (1) the verdict shall be unanimous and (2) no verdict shall be taken from a jury reduced in size to fewer than six members.

---

1. Matthew Tulchin, *An Analysis of the Development of the Jury's Role in a New York Criminal*

*Trial*, 13 J.L. & Pol'y, 425, 498 n. 4, (2005) (citation omitted).

Conspicuous by its absence in the West Virginia Rule 48 is the phrase "[u]nless the parties otherwise stipulate ... the verdict shall be unanimous." Again, the purpose of our rule is to permit parties to stipulate to non-unanimous verdicts. However, W.Va. Rule 48 *does not* mandate that all jury verdicts in civil cases must otherwise be unanimous or that the *only* exception to a unanimous verdict is where the parties stipulate to the contrary. This Court has held that in considering the constitutionality of a legislative enactment, "every reasonable construction must be resorted to by the courts in order to sustain constitutionality," and "the negation of legislative power must appear beyond reasonable doubt." Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965). In the instant case, I do not believe that the negation of W.Va.Code § 55-7B-6d appears beyond a reasonable doubt.

Further, there is certainly nothing inherently wrong with non-unanimous jury verdicts in civil cases that should cause this Court to disfavor such verdicts. In fact, as I said earlier, 34 states allow non-unanimous verdict in civil trials. Therefore, for this reason also, I see no valid reason to strike down non-unanimous verdicts in medical malpractice cases where the Legislature has clearly and unambiguously provided for such verdicts.

Finally, I note that the majority also strikes a non-severability provision. The reader should understand that the Legislature passed, as part of its reform package, what I call a "poison pill" non-severability provision. Simply put, it says that if this Court strikes down any part of specified articles in House Bill 601, which makes up part of the Medical Professional Liability Act, then every other provision of House Bill 601 shall be deemed invalid and of no further force and effect. The majority now says the Legislature cannot do that. This I find astonishing. The majority actually says the Legislature cannot reverse a statute *it* passed. It seems to me if the Legislature has the power to enact a law, it certainly has the power to repeal the same law. At any rate, I do not need to reach that provision in this dissent. Since there is no conflict between the statute and this Court's rule, I would find the statute to be valid and constitutional. Thus, the non-severability clause would not be implicated.

Accordingly, for the reasons stated above, I dissent to the majority opinion.

ALBRIGHT, Chief Justice, concurring:

(Filed July 6, 2005)

I concur with the result in this case but pause to offer some words of caution. The authority relied upon by the majority regarding the non-severability clause is quite tenuous. I fear the reasoning employed by the majority creates serious potential for mischief. On the other hand, the use by the Legislature of a so-called "non-severability" clause—especially on a regular basis—has equal or even greater potential for mischief.

In this case, I would have preferred that the Court postpone the issuance of the mandate in order to give the Legislature the time needed to reconsider whether it truly desired to have its entire enactment on medical malpractice fail because it had inadvertently strayed into an area of constitutional responsibility reserved to this Court. For this reason I concur with reservation.

BENJAMIN, Justice, concurring, in part, and dissenting, in part:

(Filed Aug. 8, 2005)

The means by which our Constitution may be impaired, even innocently, are at once subtle and not readily apparent. Artful in their form, their perceived immediate need can hide their ultimate potential for damage to our system of governance. These instruments for harm may be statutory, judicial, administrative or procedural. They may take the form of actions by one branch of government seeking to exercise an authority delegated by our Constitution to another branch of government. Beguiling in their manner, they may seem to be no more than an excuse codified to remedy a perceived injustice. Ours, necessarily, is a duty of independent scrutiny and impartial review.

Consistent with this duty, it would be calamitous for us to ignore the unconstitution-

ality of a statute simply because of its endorsement by one group or another as a necessary remedy to a current problem of society. The administration of justice requires more of us than acquiescence to such partisanship. We must base our decisions on the soundness of legal principles and not simply on the expediencies of the day. Therefore, the fact that this case was brought pursuant to the Medical Professional Liability Act ("MPLA"), W. Va.Code § 55–7B–1, *et seq.*, must, necessarily, be of no greater consequence to our deliberation in this matter than our consideration of any other statutory section which we are called upon to review. deliberation in this matter than our consideration of any other statutory section which we are called upon to review.

We must focus our review upon whether portions of the MPLA, purporting to govern a sub-category of civil liability cases, are consistent with our Constitution, or, if not, whether they must yield to our Constitution's delegation of such authority to the Judiciary (*i.e.*, this Court's rules governing the practice and procedure applicable to civil liability cases brought in the courts of this State). While the Legislature may have chosen to enact certain statutory provisions applicable only to medical professional liability actions in an attempt to stabilize the availability of health care services in this State, the Legislature may not in so doing appropriate for itself the constitutional authority to supercede or nullify this Court's constitutionally empowered procedural rules or to deny long-standing rights reserved to the people.

Thus, I concur with the majority's conclusion that the non-unanimous verdict provision of W. Va.Code § 55–7B–6d (2001) is unconstitutional because it violates Article V, Section 1 of the West Virginia Constitution. Article V, Section 1, known as the "Separation of Powers Clause," mandates that the powers of the legislative, executive and judicial branches of government remain separate and distinct. The West Virginia Constitution, likewise, specifies each branch's legitimate powers. Article VIII, Section 3 of the West Virginia Constitution, vests this Court with the exclusive power to enact rules governing "process, practice, and procedure" in the courts of this State.

I agree with the majority that rules governing jury verdicts, such as size and unanimity requirements, are procedural matters over which this Court has sole authority. *See, e.g., Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 721 (Tex.Ct.App.1997)(noting number of jurors required to reach a verdict is a procedural matter under Texas law); *State v. Lopez,* 390 N.W.2d 306, 308 (Minn.Ct.App.1986)(finding number of jurors is procedural matter); *State v. Girts,* 121 Ohio App.3d 539, 700 N.E.2d 395, 408 (Ohio Ct.App.1997)(recognizing number of persons comprising a jury is a matter of procedure subject to the court's rule making authority). Rules governing jury size and unanimity are deemed procedural because they do not affect substantive rights. Rather, they determine how substantive rights are to be enforced. So long as this Court has a validly enacted procedural rule governing an issue, the Legislature may not seek to circumvent such a rule under the guise of tort reform or any other perceived immediacy.

Rule 48 [1] of the *West Virginia Rules of Civil Procedure,* adopted in 1998, three years prior to the enactment W. Va.Code § 55–7B–6d, permits a majority verdict in the very limited circumstances where the *parties stipulate* to a less than unanimous verdict. Thus, adoption of Rule 48, which is modeled after Rule 48 of the *Federal Rules of Civil Procedure,* modified the long standing common law unanimous verdict requirement in limited situations. Addressing the unanimous verdict requirement in federal courts in light of Rule 48 of the *Federal Rules of Civil Procedure,* the United States District Court for the Eastern District of Pennsylvania has stated:

> Since the creation of the federal judicial system, federal courts have always required that a jury verdict be unanimous.... In *American Publishing,* the

---

1. Rule 48 states, in its entirety:
   The parties may stipulate that the jury shall consist of any number fewer than six or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury.

Supreme Court held that the Seventh Amendment to the United States Constitution requires a unanimous jury verdict in civil cases brought in the courts of federal territories. The Court stated:

> Now unanimity was one of the peculiar and essential features of trial by jury at the common law. No authorities are needed to sustain this proposition. Whatever may be true as to legislation which changes any more details of a jury trial, it is clear that a statute which destroys this substantial and essential feature thereof is abridging the right.

Recently, the Supreme Court has modified the position it took in the *American Publishing* case. Since that decision, many state courts have abandoned the unanimous verdict rule and have required only a majority of jurors reach a verdict....These cases, however, have addressed only the issue of unanimous verdicts in state criminal trials, although they can be interpreted as also permitting states to utilize majority jury verdicts in civil cases. However, as Justice Powell emphasized in *Johnson v. Louisiana*, these decisions have not eliminated the requirement that in federal courts a jury must be unanimous.

The long-standing commitment to unanimous jury verdicts in federal courts has been recognized in Rule 48 of the *Federal Rules of Civil Procedure* which provides:

> The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury.

Implicit in the Rule is that unless otherwise stipulated by the parties, a jury verdict in federal courts must be unanimous. *Masino v. Outboard Marine Corp.*, 88 F.R.D. 251, 252–253 (E.D.Pa.1980)(internal citations and footnotes omitted). The right to a unanimous jury verdict is embedded in this nation's history. This Court, recognizing the substantive right to a unanimous verdict requirement, has adopted in its procedural rules a limited exception which expressly requires the agreement of the parties. Thus, only the parties may agree to waive their substantive right to a unanimous jury verdict. The Legislature's attempt to infringe not only upon this Court's rule making power, but also upon the people's common law rights to a unanimous verdict, is unconstitutional. I, therefore, concur in the majority's holding that the non-unanimous verdict provision of W. Va.Code § 55–7B–6d is unconstitutional.

Likewise, I concur that the twelve person jury requirement contained within W. Va. Code § 55–7B–6d is an unconstitutional violation of the Separation of Powers Clause because it, too, infringes upon this Court's rule making power. As noted above, rules governing the size of a jury are procedural matters governed by this Court's rules. I dissent, however, from the majority's reversal of the trial court's decision herein to empanel a twelve member jury. Rule 47(b) of the *West Virginia Rules of Civil Procedure* vests a trial court with the discretion to direct that a jury consist of more than six jurors. Specifically, Rule 47(b) provides, in pertinent part, "[u]nless the court directs that a jury shall consist of a greater number, a jury shall consist of six persons." The record is clear that the trial court directed that the jury in this matter consist of twelve persons. However, the record before this Court does not indicate *why* the trial court directed that twelve persons be empaneled on the jury. I choose not speculate that the trial court had an improper reason, *i.e.*, a belief that the unconstitutional provisions contained within W. Va.Code § 55–7B–6d were binding on it, for the court's decision to empanel a twelve person jury. As the record is unclear as to the reason for the decision to empanel twelve persons, Appellant's burden has not been met. I would not reverse this discretionary decision.

Similarly, I dissent from Syllabus Point 4 and the majority's analysis of the non-severability clause contained in W. Va.Code § 55–7B–11(b).[2] Instead of invalidating the clause

---

2. W. Va.Code § 55–7B–11(b) provides:

If any provision of the amendments to section five of this article, any provision of the new

in question as unconstitutional, the majority utilizes a statutory interpretation approach to the clause. The result is that the majority premises its invalidity finding on the statutory interpretation of a clause which is clear and unambiguous. Principles of statutory interpretation should only be invoked where the statutory language is ambiguous. *See*, Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("[w]here language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation"); Syl. Pt. 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("[j]udicial interpretation of a statute is warranted only if the statute is ambiguous"). The language contained within W. Va.Code § 55–7B–11(b) is not ambiguous and is as clear as any that this Court has been called upon to consider. By its terms, the clause is either a valid exercise of power or it is an invalid attempt to appropriate power. The middle ground of invoking statutory interpretation principles to determine validity is simply not a option, in my opinion, for deciding the validity of W. Va.Code § 55–7B–11.

I conclude that a legislative body may not, years after it has dissolved and been replaced by a new legislative body, reach out from the grave to invalidate an otherwise valid law of this state in the manner intended by this clause. The insertion of a "poison pill" clause into otherwise valid legislation constitutes a usurpation of this Court's role in determining the validity of lawfully enacted statutes. Our system of governance does not envision legislative "dares" to this Court to not invalidate unconstitutional legislative enactments. A non-severability clause, such as here, improperly seeks to protect an unconstitutional enactment from legitimate scrutiny by the judicial branch by linking it

to viability of valid law (law which has been followed and properly relied upon in this State for years). By such "poison pills", the message to this Court is clear—either we permit unconstitutional legislation to stand, or otherwise valid statutes which have been relied upon and used for years by citizens of West Virginia become collateral damage. The Judiciary must resist such an injection of politics into this Court's decisions. This Court's duty to determine the constitutionality of legislation must not be impeded, constrained, threatened or cajoled. Separation of Powers, a foundation of our constitutional system of governance, proscribes any such legislative posturing which would cause us indirectly to do that which we would not do directly.

The non-severability provision of W. Va. Code § 55–7B–11(b) violates the Separation of Powers Clause of our Constitution. It constitutes an improper attempt by the Legislature to usurp this Court's independent consideration of the constitutionality of individual statutes. Any attempt to improperly influence this Court's duty of constitutional scrutiny by hinging the validity of otherwise constitutional legislation upon the requirement that this Court uphold otherwise unconstitutional legislation is intolerable and, therefore, invalid. The 2001 Legislature cannot now act to repeal otherwise valid legislation in 2005. Should the current Legislature seek to do so, it may.

---

section six-d of this article or any provision of the amendments to section eleven, article six, chapter fifty-six of the code as provided in House Bill 601, enacted during the sixth extraordinary session of the Legislature, two thousand one, is held invalid, or the application thereof to any person is held invalid, then,

notwithstanding any other provision of law, every other provision of said House Bill 601 shall be deemed invalid and of no further force and effect.