## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Respondent Below, Respondent**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-1082** (Mineral County 12-MAP-10)

**William Ray Hall,**
**Petitioner Below, Petitioner**

## MEMORANDUM DECISION

Petitioner William Ray Hall, by counsel Agnieszka Collins, appeals the Circuit Court of Mineral County's August 15, 2012, order denying his appeal from magistrate court. The State of West Virginia, by counsel Marland Turner, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

According to the circuit court order, Petitioner William Ray Hall, often had lunch at El Jinete Mexican Restaurant in Mineral County, West Virginia, with his co-worker, Michelle Zumpano. On or about December 15, 2010, during lunch, Ms. Zumpano commented to petitioner that a couple of the male employees were looking at her in a way that she found odd. That evening, petitioner contacted the owners of the restaurant, Pricilla and Martin Torres, to ask if he could meet with them. When they met that evening, petitioner said that employees at the restaurant had stolen personal information from his female friend's credit card and that that information had been used by the employees to cyber-stalk her. Petitioner explained to Mr. and Mrs. Torres that cyber-stalking was a crime and that they were ultimately responsible for their employees' conduct. At one point, petitioner had Mr. and Mrs. Torres bring several employees into the room, and petitioner identified one of them as being involved in wrongfully obtaining the information from petitioner's friend's credit card. He also identified another employee as being involved in the credit card identity theft. At that point, petitioner did not reveal the identity of his friend. Petitioner threatened to harm Mr. and Mrs. Torres' business and made comments as to how much this would cost them financially, indicating that $20,000 would be suitable to resolve the matter. He also questioned the immigration status of some of the restaurant employees.

Petitioner, however, claims that during the meeting he discussed the employees' unwelcome sexual advances toward his friend. He states that he made it known that he intended to picket the restaurant and disseminate information that some of the employees wrongfully obtained the names of female patrons from their credit card statements, wrongfully obtained their

1

contact information, and then engaged in unwanted telephone/texting contact. Petitioner also claims that he asked Mr. and Mrs. Torres how much they would demand if the same thing happened to their loved one, and that is how the sum of $20,000 arose.

On December 16 and 17, 2010, Mrs. Torres recorded calls with petitioner. During those calls, petitioner made allegations as to how the credit information was supposedly stolen from his friend whom he identified only as Michelle. Petitioner stated he hoped that Mr. and Mrs. Torres could come up with $20,000 to make payment because he wanted to see the employees prosecuted, convicted, and sent to jail, indicating he thought it was unfortunate that Mr. and Mrs. Torres were dragged into the situation. Petitioner commented that if he had to "pull the trigger" on this matter, he was going to go to everyone, including the credit card company. He also stated that once the money was paid, he would have his lawyer draw up paperwork to make it official. Petitioner set a deadline of January 15, 2011, for the payment of the $20,000.

During a conversation on December 17, 2010, petitioner informed Mrs. Torres that Michelle had voluntarily given her phone number to one of the El Jinete employees, so he reduced the demand to $10,000. He maintained that the criminal offenses were committed by employees of the restaurant and that Mr. and Mrs. Torres were financially and legally liable. Petitioner made a comment that if the money was paid, there would be no picketing, no flyers would be placed, and he would no longer bother them. He made repeated threats as to the two employees being responsible for what happened, but petitioner emphasized that Mr. and Mrs. Torres were financially responsible. He also said that it was his intent to keep customers out of the restaurant and put them out of business.

On January 11, 2011, a third conversation was recorded. Sergeant John Droppleman of the Keyser detachment of the West Virginia State Police was present with Mrs. Torres during that conversation. During that call, arrangements were made for petitioner to pick up a check for $10,000 at the restaurant the next morning. Petitioner arrived at the scheduled time, and when he attempted to exit his vehicle, he was arrested by Sgt. Droppleman and two other troopers, Joel Whisner and Ben Justice. Petitioner was originally charged with the felony offense of extortion, but the charge was amended and re-filed as attempted extortion in violation of the latter provision of West Virginia Code § 61-2-13.

Approximately ten days prior to trial, petitioner filed a motion for continuance of the trial, asserting that he needed to subpoena important computer records of his conversations with Michelle Zumpano. The magistrate court denied petitioner's motion.

At trial, the evidence was that Ms. Zumpano had previously voluntarily provided her cell phone number to one of the restaurant employees. She testified that on one occasion, she received a late night call during which there were some inappropriate comments made, but aside from that incident, she had not received any threatening or harassing phone calls. She denied that her personal identification information had been stolen from her credit card or wrongfully obtained by anyone at the restaurant. Ms. Zumpano also testified that she was never stalked or threatened by Mexican gangs, that she never suffered any financial consequences, and that she never had to change credit cards or open new accounts as a result of any problems while eating at the restaurant. At the conclusion of the magistrate court trial, petitioner was found guilty of the

2

misdemeanor offense of attempted extortion pursuant to West Virginia Code § 61-2-13. As a result, he was sentenced to one year in jail and was ordered to pay a fine of $500, costs, and jury fees.

Counsel for petitioner appealed the magistrate court conviction to the circuit court asserting two assignments of error: 1) As a matter of law, the jury's finding of guilt should be reversed as the verdict was not supported by the evidence admitted at trial; and 2) The magistrate court erred when petitioner's request for a continuance was denied. In its August 15, 2012, "Order Denying Appeal," the circuit court denied petitioner's appeal and motions. It is from this order that petitioner appeals.

In his petition for appeal to this Court, petitioner asserts a single assignment of error: Whether West Virginia Code § 61-2-13 violates what petitioner refers to as the "overbreadth doctrine." Petitioner asserts that the statute, on its face, may threaten others who wish to engage in protected expression and conduct. Petitioner contends that West Virginia Code § 61-2-13 criminalizes any conduct, whether legal or illegal, protected or privileged, that results in the receipt of money or pecuniary benefit from another for refraining from such conduct. Petitioner asserts that under the statute if any person threatens to make an accusation against another and obtains money therefrom in exchange for their silence or inaction, such conduct would constitute a crime. The State argues in response that the use of the word "extort" demonstrates the Legislature's intention to criminalize only bad faith actions used for the unlawful acquisition of property.

As the State correctly points out in its response before this Court, petitioner failed to challenge the constitutionality of the statute before either the magistrate court or the circuit court. Further, in its Notice of Appeal filed with this Court, petitioner did not raise the constitutionality of West Virginia Code § 61-2-13. Petitioner also did not assert the plain error doctrine. "[O]ur cases have explicitly stated that, under very narrow circumstances, an error not properly preserved at the trial court level may be considered on appeal… [A] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." *Louk v. Cormier*, 218 W.Va. 81, 86-87, 622 S.E.2d 788, 793-794 (2005). We are not of the opinion that the facts of this case warrant such discretion. Therefore, under the facts of this case, we decline to address petitioner's sole assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**
Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II